Gilbert ANDERSON, Jr., Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams, and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, and Chrysler Corporation, Appellees.

No. 2–680A189.

Court of Appeals of Indiana, Third District.

Nov. 25, 1980.

Rehearing Denied Jan. 22, 1981.

Barry A. Macey, Miles, Segal & Macey, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellees.

STATON, Judge.

Gilbert Anderson, Jr., appeals from the decision of the Indiana Employment Security Division Review Board denying him Trade Readjustment Allowances under 19 U.S.C. § 2291 et seq., Trade Act of 1974, § 231.

We consider three of the four issues Anderson raised on appeal:[1]

(1) Did the Review Board erroneously interpret the 26 week eligibility requirement of 19 U.S.C. § 2291(2) (1976)?[2]

(2) Did the Review Board erroneously determine the date of his separation from employment?

(3) Did the Review Board fail to apply the relevant statutory provisions?

We reverse.

Gilbert Anderson, Jr., was a machine operator in the power steering department of Chrysler Corporation's Indianapolis Electrical Plant. On September 27, 1978, he was relieved of this job because of a doctor's certification of medical problems and a resulting recommendation of limited physical activity. Chrysler was obligated to give Anderson the first job opening in the plant which was within his medical restrictions. On January 5, 1979, Anderson and all other plant workers within his level of seniority were put on indefinite layoff.

On November 6, 1978, the United States Secretary of Labor certified that workers in Chrysler Corporation's Indianapolis Electrical Plant (Chrysler) met the group eligibility requirements[3] to apply for adjustment assistance. The Secretary determined that the total or partial separation began or threatened to begin on August 28, 1978 (the impact date).[4]

I.

Worker Eligibility Requirement

The Review Board found that Anderson was required to have 26 weeks of employment with Chrysler after the impact date chosen by the United States Secretary of Labor. Anderson counters that he does not have to be employed by Chrysler for 26 weeks after the impact date.

Anderson argues that the Secretary of Labor has already determined that, as of the impact date, Anderson is employed by a firm in which sales or production have decreased absolutely and workers are losing,

---

1. Anderson also argued that the Review Board's denial of his request for a hearing denied him of due process. We need not discuss this issue as we reversed the Review Board's decision on other grounds.

2. 19 U.S.C. § 2291(2) (1976) states the following:

"Such worker had, in the 52 weeks immediately preceding such total or partial separation, at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm, or, if data with respect to weeks of employment are not available, equivalent amounts of employment computed under regulations prescribed by the Secretary."

3. 19 U.S.C. § 2272 (1976) states the following:
"The Secretary shall certify a group of workers as eligible to apply for adjustment assistance under this part if he determines—

"(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

"(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

"(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

"For purposes of paragraph (3), the term 'contributed importantly' means a cause which is important but not necessarily more important than any other cause."

4. 19 U.S.C. § 2273 (1976).

or about to lose their jobs. He urges us to conclude that he does not have to somehow retain his job for one–half year under these circumstances. Anderson contends that the 26 week employment requirement is a separate condition to prevent recovery by new hires or temporary employees whose employment with the company has not been for a sufficient period of time to warrant Trade Readjustment Allowances (TRA).

We are persuaded that the Review Board incorrectly interpreted 19 U.S.C. § 2291(2), Trade Act of 1974 § 231. While we realize that the Review Board's interpretation is entitled to great weight, their interpretation is not binding when that interpretation is incorrect. *Indiana Civil Rights Com'n v. Sutherland Lumber* (1979), Ind.App., 394 N.E.2d 949; *Indiana State Fair Board v. Hockey Corp. of Amer.* (1975), 165 Ind.App. 544, 333 N.E.2d 104.

As there is room for more than one interpretation of the statute, it should be construed in such a way as to give effect to the general intent of the legislature. *Ind. Dept. of State Revenue v. Endress & Hauser* (1980), Ind.App., 404 N.E.2d 1173. The overall purpose of the Trade Act of 1974 was to reduce or eliminate tariff and non–tariff barriers to international trade in order to realize the economic and political benefits of a trade linked world.[5] Congress

realized that the benefits and burdens of a liberalized international trade policy would not be distributed uniformly throughout the country. Domestic industries which are less efficient than foreign competitors will reduce the number of people they employ, with often disastrous effects upon a .community. These domestic industries may also be unable to compete with the foreign industries which enjoy subsidies, lower worker wage rates and exchange rate advantages. *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. Marshall* (1978), D.C.Cir., 584 F.2d 390.

Congress felt it was unfair for isolated industries, workers, and communities to bear these burdens while the country, as a whole enjoyed such benefits as lower prices and the expansion of more efficient industries. In seeking a remedy to this problem, Peter Brennan, the United States Secretary of Labor, noted the failure of the workers adjustment assistance program established under the Trade Expansion Act of 1962.[6] The legislative history of the Trade Act of 1974 sets out the 1962 Act's failures in more detail and also reveals Congress's hope that the 1974 Act's eased qualifying criteria would provide more benefits to more workers.[7] It is against this back-

---

5. 19 U.S.C. § 2102 (1976). *See generally* S.Rep.No. 93-1298, 93d Cong., 2d Sess. 5-19 (1974), reprinted in (1974) U.S. Code Cong. & Admin. News, pp. 7186, 7200.

6. He stated:
   "The access to the program has been too difficult, the process has been far too time consuming and the delivery of services and assistance to the affected workers has been ineffective and far too late to facilitate the adjustment process.
   "The Trade Reform Act provides an innovative approach to adjustment assistance for workers which eases access to the program, centralizes and speeds the process of determination and delivery of services, and integrates the system into the basic unemployment insurance program."
   Trade Reform: Hearing on H.R. 6767 Before the House Comm. on Ways and Means, 93d Cong., 1st Sess., Part 2, 505 (1973).

7. "The worker adjustment assistance provisions enacted in 1962, however, have clearly

not been very effective. For the first seven years of the program, no worker was found eligible for its benefits. Since November, 1969, when the first worker certification was issued, only an estimated 47,000 workers in 29 States have been certified as eligible. Total outlays for worker adjustment assistance total less than $69 million over the entire period (an average outlay of about $1,500 per worker). Moreover, the relatively meager information that is available with respect to the operations of the program indicate that, even where workers have been found eligible, the program has often functioned in such a manner that its objectives were frustrated. The petitioning process has proven to be cumbersome and time–consuming. Many recipients did not receive payments under the program until long after they became unemployed because of increased imports. Too often the assistance which they received came too late for it to have its maximum beneficial impact. In light of this experience, the Committee has provided a new adjustment assistance pro-

ground that we must determine the correct interpretation of 19 U.S.C. § 2291, Trade Act of 1974 § 231, which states the following:

> "(2) Such worker had, in the 52 weeks immediately preceding such total or partial separation, at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm, or, if data with respect to weeks of employment are not available, equivalent amounts of employment computed under regulations prescribed by the Secretary."

We are convinced that Anderson is required to have 26 weeks of employment out of the 52 weeks preceding his separation from Chrysler. These 26 weeks of employment do not have to be after the impact date. We reach this conclusion after comparing the worker's qualifying requirements of the Trade Expansion Act of 1962 [8] with the requirements of 19 U.S.C. § 2291. The legislative history of the Trade Act of 1974 provides a summary of the requirements of the 1974 Act and the changes from the 1962

Act.[9] There is no mention of a new requirement of working 26 weeks after the declared impact date in order to qualify for Trade Readjustment Allowances.

On this issue we reverse.

## II.

### Separation Date

■ The Review Board's findings of fact relevant to this issue are the following: [10]

> "The evidence shows the claimant worked for this employer for two and a half years. His last position prior to the separation at issue was as a machine operator at the employer's Indianapolis, Indiana electrical plant. His employment terminated on September 27, 1978 because the employer had no work available which the claimant was physically able to perform. On January 5, 1979 the claimant's status was changed to indefinite layoff."

These facts are supported in the record by substantial evidence of probative value. We are bound by these facts.[11] *Osborn v.*

---

gram with eased qualifying criteria and a streamlined petitioning process. It is the intention of the Committee that workers displaced by increased imports receive all the benefits to which they are entitled in an expeditious manner. In addition, the Committee bill would provide more adequate benefit payments to eligible recipients and would make several improvements in the other services which these recipients would receive under the program...."
S.Rep. 93-1298 (*supra*), reprinted in (1974) U.S. Code Cong. & Admin. News, p. 7273.

8. "Such worker shall have had—
   (1) in the 156 weeks immediately preceding such total or partial separation, at least 78 weeks of employment at wages of $15 or more a week, and
   (2) in the 52 weeks immediately preceding such total or partial separation, at least 26 weeks of employment at wages of $15 or more a week in a firm or firms with respect to which a determination of unemployment or underemployment under section 1902 of this title has been made...."
   19 U.S.C. § 1941(c) (1970).

9. "Under the bill a worker must have been employed with the same trade impacted firm or subdivision for 26 out of the 52 weeks preceding his separation at wages of at least $30 a week. These qualifications differ from

those in present law in that: (1) they omit the requirement of total employment during 78 of 156 weeks immediately preceding total or partial separation, (2) they increase the required wages for a qualifying week of employment from $15 to $30, and (3) they add a new requirement that the qualifying weeks be with a single firm or subdivision of a firm."
S.Rep.No. 93-1298, *supra*, reprinted in (1974) U.S. Code Cong. & Admin. News, p. 7277.

10. Although the referee made the findings, these were adopted and incorporated by reference into the decision of the Review Board. We review them as though they are the Review Board's own findings.

11. There are seven circumstances under which we will not accept the facts as found by the Review Board:
    "(1) The evidence on which the Review Board based its conclusion was devoid of probative value;
    "(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;
    "(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

*Review Board of Indiana Employment Security Division* (1978), Ind.App., 381 N.E.2d 495.

### III.

### Relevant Provisions

The Review Board made the following conclusion of law:[12]

"The issue is whether the claimant is entitled to receive trade readjustment assistance. The claimant was separated from this employment for reasons other than lack of work. He did not have the required 26 weeks of adversely affected employment. He was not separated from adversely affected employment within the meaning of the Trade Act of 1974."

Anderson argues that the conclusion of law is incorrect because the Review Board failed to correctly apply all of the relevant federal statutory provisions to the facts in this case. We agree.

■ The Secretary of Labor of the United States has prescribed regulations necessary to carry out the provisions of the Trade Act of 1974.[13] 29 C.F.R. § 91.10 (1979) states when an individual worker is disqualified to receive Trade Readjustment Allowance (TRA) even though he is otherwise qualified.[14] The determinative section of 29 C.F.R. § 91.10 (1979) is as follows:

"(a) *State law applies.* [italics original] Except as stated in paragraphs (b) and (c) of this section, *an individual shall not be paid a trade readjustment allowance for a week of unemployment for which the individual is or would be disqualified to receive unemployment insurance* under an applicable State law." (Emphasis added.)

If Anderson's separation was for a reason that disqualified him from receiving unemployment insurance,[15] he would not be able to receive TRA benefits.

■ The Review Board failed to consider the above Federal Regulation. Anderson was receiving unemployment benefits. He also meets the group eligibility requirements,[16] and he meets the requirements for workers;[17] therefore, he is entitled to receive TRA benefits. Anderson was separat-

---

"(4) There was no substantial evidence supporting the conclusions of the Review Board;

"(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

"(6) The Review Board ignored competent evidence;

"(7) Reasonable men would be bound to reach the opposite conclusion from the evidence in the record."

*Williamson Co. v. Review Board of Indiana Employment Security Division* (1969), 145 Ind. App. 266, 250 N.E.2d 612. None of these circumstances exist in the instant case.

**12.** Although the referee made the conclusions of law, these were adopted and incorporated by reference into the decision of the Review Board. We review them as though they are the Review Board's own conclusions of law.

**13.** He is empowered to do so by 19 U.S.C. § 2320 (1976).

**14.** In order for Anderson to qualify for TRA benefits, the Secretary of Labor of the United States must have certified the workers of Chrysler to be eligible to apply for adjustment assistance. 19 U.S.C. §§ 2271–2273 (1976). As the Review Board found, the Secretary of Labor determined that as of August 28, 1978, this group of workers qualified to apply for TRA

benefits. Anderson then had to meet the requirements of 19 U.S.C. § 2291 (1976). Under Section "I." above, we concluded Anderson did have the 26 weeks of employment at wages of $30 or more a week.

**15.** Anyone fired for "just cause" is ineligible to receive unemployment compensation under the Indiana Employment Security Act. *Osborn v. Review Bd. of Ind. Employ. Sec. Div.* (1978), Ind.App., 381 N.E.2d 495. *See* grounds set out in IC 1971, 22–4–15–1 (Burns Code Ed., 1979 Supp.).

**16.** 19 U.S.C. § 2272 (1976). The legislative history of the Trade Act of 1974 discloses the following:

"A certification of eligibility to apply for assistance should be sufficient to establish eligibility for assistance under this program for all workers to whom it is applicable if they meet the qualifying requirements outlined in the next section. There would be no requirement that a worker establish on an individual basis that his unemployment is related to increased imports."

S.Rep.No. 93–1298, *supra,* reprinted in (1974) U.S. Code Cong. & Admin. News, p. 7277.

**17.** 19 U.S.C. § 2291 (1976).

ed from adversely affected employment as defined by 19 U.S.C. § 2319(1) (1976).[18]

Judgment reversed.

HOFFMAN, J., concurs in result with opinion.

GARRARD, P. J., concurs in majority opinion as to I and II; concurs in concur in result opinion of HOFFMAN, J., as to III.

HOFFMAN, Judge, concurring.

I concur in result but disagree with the discussion of Issue III in the majority opinion. The federal regulation employed in that discussion reads:

"(a) *State law applies.* [italics original] Except as stated in paragraphs (b) and (c) of this section, *an individual shall not be paid a trade readjustment allowance for a week of unemployment for which the individual is or would be disqualified to receive unemployment insurance* under an applicable State law." (Emphasis added).

29 C.F.R. § 91.10 (1979).

This section of the regulations is clearly labeled, "Disqualifications." It does not attempt to set forth the criteria of eligibility nor the factors which must be considered to determine eligibility. It merely sets forth one instance of exclusion. If an individual is not entitled to receive unemployment insurance under an applicable state law, he may not receive the allowance. This does not mean that, if an individual does receive unemployment insurance, he is, therefore, entitled to the allowance. This is a regulation of exclusion, not inclusion. Once the Board determines that the claimant is not excluded under this provision, then it is no longer necessary for this provision to play a role in the determination of eligibility.

The Review Board's decision included the following findings of fact:

"His employment terminated on September 27, 1978 because the employer had no work available which the claimant was physically able to perform. On January 5, 1979 the claimant's status was changed to indefinite layoff."

As stated in Issue II of the majority opinion, this Court is bound by these facts. The Board's application of the law to these facts, however, is in error. As of September 27, 1978, the claimant's separation was due to his physical limitations. However, the change of status on January 5, 1979 resulted from the employer's lack of work. The limited effect of the September layoff was to remove him from his current job until an opening occurred in another job which he could perform with his medical restriction. The effect of the January layoff was to separate him indefinitely from any employment at Chrysler. Therefore, as of January 5, 1979, the claimant was separated from adversely affected employment within the meaning of the Trade Act of 1974.

Based on these interpretations, I concur with the majority in result.

---

18.    "The term 'adversely affected employment' means employment in a firm or appropriate subdivision of a firm, if workers of such firm or subdivision are eligible to apply for adjustment assistance under this part."