419 N.E.2d 150 (1981)
Richard P. DEWHIRST, Appellant (Defendant below),
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, As Members of and As Constituting the Review Board of Indiana Employment Security Division and Gary Sheet & Tin, U.S. Steel Corporation, Appellees (Plaintiffs below).
No. 2-180A33.
Court of Appeals of Indiana, Fourth District.
April 14, 1981.
Rehearing Denied May 22, 1981.
Given, Dawson & Cappas, East Chicago, for appellant.
Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellees.
YOUNG, Presiding Judge.
Claimant Richard P. Dewhirst seeks review of a decision of the Review Board of *151 the Indiana Employment Security Division holding him ineligible for Trade Readjustment Allowance (TRA) under the federal Trade Act of 1974. The Board denied Dewhirst's TRA claim after concluding that his layoff from the tin mill division of United States Steel Corporation was not separation from adversely affected employment as required by the Trade Act. Dewhirst challenges this conclusion as contrary to law, more particularly, as contrary to the federal Trade Act, 19 U.S.C. § 2271 et seq. He argues that his work in the sheet mill division of U.S. Steel for 26 months satisfies the eligibility requirement of the Trade Act. We agree and reverse the Review Board's decision.
Under the Trade Act of 1974, 19 U.S.C. § 2271, et seq. (1976), a worker separated from employment certified by the Department of Labor as adversely affected by imported products is eligible to apply for adjustment assistance. Application for assistance is made to the Indiana Employment Security Division, the state agency which has contractually undertaken the administration of TRA.
Claimant Dewhirst was employed by United States Steel Corporation on June 25, 1977 and was assigned to the sheet mill division. The sheet mill division of U.S. Steel was found by the Secretary of Labor to be employment adversely affected by imports,[1] and thus, its workers were certified as eligible to apply for adjustment assistance. Dewhirst worked in the sheet mill division from June 25, 1977 until late August, 1979 when he was, because of a slow down in the sheet mill, transferred to the tin mill division, a division which was not certified as adversely affected. Dewhirst worked as a laborer doing maintenance with a clean-up crew in the tin mill division. He knew when he was transferred from his permanent department in which he had worked over two years that his layoff was imminent. On September 2, 1979, after no more than two weeks in the tin mill division, Dewhirst was laid off from U.S. Steel; he then applied for and was denied TRA benefits.
The Review Board made the following conclusion of law:
From the foregoing findings of fact, it is concluded that the claimant is not eligible to Trade Readjustment Allowance benefits based on his separation which occurred on September 2, 1979, since the claimant's separation at the time in question, was not in fact from "adversely affected employment" as required by the Trade Readjustment Allowance Act of 1974.
Dewhirst argues that the Review Board has incorrectly interpreted the qualifying requirements of 19 U.S.C. § 2291, and that its conclusion is, therefore, contrary to law. He bases his argument on both the statutory language and the purposes of the Trade Readjustment Act.
Before addressing this issue, we consider the appropriate standard of review. The Review Board's interpretation of the relevant statutory provisions is entitled to great weight and will be affirmed so long as its interpretation is reasonable. Osborn v. Review Board of Indiana Employment Security Division, (1978) Ind. App., 381 N.E.2d 495.
*152 19 U.S.C. § 2291 establishes the following requirements which a worker must satisfy to qualify for TRA:
Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification under subpart A of this part who files an application for such allowance for any week of unemployment which begins after the date specified in such certification pursuant to section 2273(a) of this title, if the following conditions are met:
(1) Such worker's last total or partial separation before his application under this part, occurred 
(A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment, and
(B) before the expiration of the 2-year period beginning on the date on which the determination under section 2273 of this title was made, and
(C) before the termination date (if any) determined pursuant to section 2273(d) of this title; and
(2) Such worker had, in the 52 weeks immediately preceding such total or partial separation, at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm, or, if data with respect to weeks of employment are not available, equivalent amounts of employment computed under regulations prescribed by the Secretary.
We are persuaded that the Review Board incorrectly interpreted 19 U.S.C. § 2291. That section does not expressly require the layoff of an employee directly from the adversely affected subdivision. It requires that an "adversely affected worker" be separated from employment with a firm in which, or in a subdivision of which, adversely affected employment exists. As there is room for more than one interpretation of the statute, it should be construed in such a way as to give effect to the general intent of the legislature. Anderson v. Review Board of the Indiana Employment Security Division, (1980) Ind. App., 412 N.E.2d 819.
The overall purpose of the Trade Act of 1974 was to reduce or eliminate tariff and non-tariff barriers to international trade in order to realize the benefits of a trade linked world. Id. at 822. Congress established a special program of worker adjustment assistance in the belief that the special nature of employment dislocation resulting from these changes in trade policy necessitated a level of worker protection greater than that available through regular state unemployment insurance programs. Because entire industries may be adversely affected by increased imports, workers may not have realistic opportunities to find new employment. Moreover, the affected industry or industries may be concentrated in a particular region thereby compounding the difficulties of absorbing the displaced workers into other types of employment. See generally S.Rep.No. 93-1298, 93d Cong., 2d Sess. 5-19 (1974), reprinted in (1974) U.S. Code Cong. & Admin.News, p. 7273. Congress, in the Trade Act of 1974, attempted to case the TRA qualifying criteria in the hope that more benefits would be provided to more workers. Anderson, supra, at 822. It is against this statutory background that we must determine the reasonableness of the Review Board's interpretation of 19 U.S.C. § 2291.
The Secretary of Labor of the United States has prescribed regulations necessary to carry out the provisions of the Trade Act. 29 C.F.R. § 91.7 (1980) lists the qualifying requirements[2] for TRA. To qualify for a *153 trade adjustment allowance, an individual must meet the following three requirements. First, the individual must be an adversely affected worker covered by a certification. Adversely affected worker "means ..." an individual who, because of lack of work in adversely affected employment 
(a) had been totally or partially separated from such employment, or
(b) has been totally separated from employment with the firm in a subdivision of which such adversely affected employment exists.
19 U.S.C. § 2319(2).
Adversely affected employment means "employment in a firm or appropriate subdivision of a firm if workers of such firm or subdivision are certified as eligible to apply for adjustment assistance." 29 C.F.R. § 91.3(3).
The term total separation is defined as "the layoff or severance of an individual from employment with a firm in which, or in a subdivision of which, adversely affected employment exists." 19 U.S.C. § 2319(11).
Unfortunately, these definitions shed little light on the meaning of 19 U.S.C. § 2291. Each statutory term is defined by reference to another statutory term itself in need of definition. Nonetheless, we are not convinced that the statute requires, as the Review Board concluded, direct layoff from the adversely affected subdivision. The statute requires separation from employment with a firm in which, or in a subdivision of which, adversely affected employment exists. Moreover, we are convinced, given the facts of this case, that Dewhirst has met this first requirement even if it were construed, as the Review Board has done, to require direct separation from the adversely affected subdivision. Dewhirst testified that the threat of layoff accompanied his transfer from his permanent department and that his work in the tin mill department was "makeshift work." Dewhirst, having worked over two years in the sheet mill department, worked at most two weeks in the tin mill department before he was laid off from U.S. Steel. On these facts we conclude that Dewhirst, although technically laid off from the tin mill division, was, on September 2, 1979, totally separated from "employment with a firm ... in a subdivision of which adversely affected employment exists." He was totally separated from employment with U.S. Steel in the adversely affected sheet mill division. As such, he is an adversely affected worker covered by a certification.[3]
The second requirement is that the individual's last separation occur on or after the impact date and before the expiration or termination date of the certification, etc. The fulfillment by Dewhirst of this requirement is not at issue. "Last separation" means the separation from adversely affected employment most recently preceding an individual's application for TRA, 29 C.F.R. § 91.3(20). We have, in the preceding section, determined this date to be September 2, 1979.
The third and final requirement is that in the 52 weeks preceding the individual's last separation, the individual must have at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm. Again, Dewhirst's compliance with this requirement is not at issue.
In conclusion, we hold that Dewhirst has met the qualifying requirements of 19 U.S.C. § 2291. He was, on September 2, *154 1979, totally separated from employment with U.S. Steel in a subdivision of which, the sheet mill division, adversely affected employment exists. In light of the purpose of the Trade Act of 1974 and the special facts of this case, the Review Board's conclusion that Dewhirst was ineligible for TRA because his separation occurred while he was working in the tin mill division is unreasonable.
We therefore reverse the decision of the Review Board on this issue and remand for further proceedings[4] consistent with this opinion.
CHIPMAN and MILLER, JJ., concur.
NOTES
[1] 19 U.S.C. § 2272 (1976) states the following:

"The Secretary shall certify a group of workers as eligible to apply for adjustment assistance under this part if he determines 
"(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
"(2) that sales of production, or both, of such firm or subdivision have decreased absolutely, and
"(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.
"For purposes of paragraph (3), the term `contributed importantly' means a cause which is important but not necessarily more important than any other cause."
[2] § 91.7 Qualifying requirements.

To qualify for a trade readjustment allowance an individual must meet each of the following requirements.
(a) Certification. The individual must be an adversely affected worker covered by a certification.
(b) Separation. The individual's last separation must occur:
(1) On or after the impact date;
(2) Before expiration of the 2 year period following the date of the certification;
(3) Before the termination date, if any, of the certification;
(4) Not more than one year before the date of the petition on which certification was granted, except as provided in section 246(b) of the Act; and
(5) Not before October 3, 1974, except as provided in section 246(b) of the Act.
(c) Wages and employment. In the 52 weeks preceding the individual's last separation the individual must have at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm. Evidence that an individual meets this requirement shall be obtained as stated in § 91.8.
[3] Although the statutory language is unclear, not expressly requiring layoff from the firm directly from the adversely affected subdivision, we believe that the statutory scheme contemplates such direct layoff as the usual way in which separation will occur.
[4] The Review Board in its brief has made several arguments regarding the lack of certain evidence. As the Employment Security Division's role is to ensure that complete presentation of the case is made, it must, when necessary, take steps to obtain the relevant evidence. Lucas v. Review Board of Indiana Employment Security Division, (1981) Ind. App., 416 N.E.2d 906. We therefore cannot agree with the Review Board's arguments that the absence of the contractual agreement between the Secretary of Labor and the State of Indiana, and the certification by the Secretary of Labor of the U.S. Steel sheet mill division is fatal to this appeal. Dewhirst presented unchallenged testimony on these areas and because he was not represented by an attorney, the referee was then required to insure the complete presentation of this evidence. Id. at p. 907 n. 5. Any necessary documentation should, upon remand, be obtained by the Referee from U.S. Steel.