John B. SKRUNDZ, et al.,
Claimants-Appellants,

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY and Inland
Steel Company, Respondents-Appellees.

No. 2-781A241.

Court of Appeals of Indiana,
First District.

Feb. 8, 1983.

Bernard M. Mamet & Associates, Ltd., Chicago, Ill., M. Bosch, Stodola & Bosch, Hammond, for claimants-appellants.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for respondents-appellees.

NEAL, Judge.

## STATEMENT OF THE FACTS

This is an appeal by claimants-appellants John B. Skrundz, et al.[1] (Claimants), representing 71 present and former bricklayer employees of respondent-appellee Inland Steel Company, Indiana Harbor Works, East Chicago, Indiana, (Inland) whose claims for trade readjustment allowance benefits (TRA) under the Federal Trade Act of 1974, 19 U.S.C. § 2271 et seq. (Act), were denied by the respondent-appellee Review Board of the Indiana Employment Security Division (Agency or Review Board). The Agency is a cooperating state agency which administers this federal program in the State of Indiana on behalf of the Secretary of the United States Department of Labor (Secretary) and pursuant to the regulations issued by the Secretary set forth under 29 C.F.R. §§ 90–91.

We reverse and remand.

## STATEMENT OF THE FACTS

On December 7, 1976, Inland employees, members of the United Steelworkers of America, filed a petition with the Secretary, seeking certification coverage for TRA benefits. On October 17, 1977, the Secretary approved the petition and issued certification TA–W–1602 which provided that:

"All workers engaged in employment related to the production of carbon steel plate and structural shapes at the Indiana Harbor Works of the Inland Steel Company in East Chicago, Indiana who became totally or partially separated from employment on or after December 7, 1975 are eligible to apply for adjustment assistance under Title II, Chapter 2 of the Trade Act of 1974."

The certification period for "adversely affected workers"[2] was October 17, 1977

1. The following is a list of the 70 claimants whose appeals were consolidated with the present case: Michael Ross; Thomas Micam; Gary Philips; John Hostelter; Michael O'Keefe; Lawrence Ruiz; Wayne Keilman; Eldo Smith; Salvador Martinez; James Costino; Benjamin Woodson; Mathew Hoff; Claude Buckman; Richard Lopez; Paul Johnson; Christopher Hanna; Joseph Guerrero; Carl Clark; Carl Crayton; Robert Langendofer; Robert Huizenga, Jr.; Frank Mullendore; Arturo Garcia, Jr.; James Kobialka; James Williams; Shawn Pierce; Ronald Glaze; William Jenkins; Richard Knight; James Buckman; Robert Edwards; David Barton; Joseph Ramos; Porter Jordan, Jr.; Frederico Trevino; Daniel Monastyrski; Edward Millia; James Christian; Donald Kerr; Sidney O'Neill; Jeffery Keyes; Larry Wolotka; Daniel Nashkoff; Gary Singer; Bernard Grzybowski, Jr.; Andrew Suda; Charles Galik; Eugene Barnes; Martin George; Peter Kalinich; Richard Carlson; Steven Cunningham; Vincent Sebo; Donald Duffy; Roger Rastovski—Case No. 2–1081 A 343; Donald Stamper—Case No. 2–1081 A 353; Evan A. Lewis—Case No. 2–1281 A 428; Rex D. Fiedler—Case No. 2–981 A 308; Orville F. Alford—Case No. 2–1081 A 343; Gregory S. Burge—Case No. 2–981 A 306; Ricky J. Kamradt, Peter E. Krukowski and Robert A. Fabian—Case No. 2–981 A 307; Stanley Zawora, Richard Kucsera, Joseph Kuhl, James D. Norris, Ronald Bach, Sherman Hopson, and Daniel M. Kitchen—Case No. 2–1081 A 355.

2. Under "Part 91—ADJUSTMENT ASSISTANCE FOR WORKERS AFTER CERTIFICA-

through October 17, 1979. The Claimants all filed their written applications for TRA benefits after expiration of the certification period, most having filed their claims during May and June, 1981, for partial or total separations from employment which occurred during the certification period. Many of these same Claimants testified before the Agency's appeals referee that they had tried to apply for TRA benefits shortly after being laid off, but were either dissuaded from applying or told by Agency representatives that they were ineligible for the benefits because they were maintenance workers rather than workers engaged in employment related to the production of steel who qualified under certification.

The Agency's position as to the Claimant bricklayers is as follows: 1) Some Claimants were separated from employment during the certification period, but failed to file an initial claim for TRA benefits until after certification had expired. Furthermore, these Claimants filed their applications after the Agency had issued the following directive on April 20, 1981:

## "INDIANA EMPLOYMENT SECURITY DIVISION

### OFFICE MEMORANDUM

| | |
|---|---|
| To | All Local Office Managers |
| From | Alan R. Diodore, Assistant Director—UI |
| Date | April 20, 1981 |
| Subject | Denial of Retroactive Claims for TRA |

Some Local Offices have reported that as different certifications expire or near expiration, claimants are attempting to es-tablish or extend TRA claims based on possible separations that occurred as much as two years in the past.

Weeks occurring before the certification date will not be denied because of the claimant's failure to report during such weeks. However, for weeks occurring after a group of workers has been certified, reporting requirements will be enforced on TRA just as they are on UI. A determination will be issued when benefits are denied for failure to meet reporting requirements.

If the claimant is now attempting to establish an initial TRA claim when he could have done so earlier, the claim will be taken with a current effective date. The Benefit Determinations Section will deny the claim for lack of a current separation or because the certification has expired, whichever is appropriate."

2) Other Claimants were denied TRA benefits because there was insufficient evidence to demonstrate that the claimants were separated from employment related to the production of carbon steel plate and structural shapes at Inland. The Agency concluded that the Claimants were maintenance workers, and therefore, were not separated from adversely affected employment[3] as defined under the certification petition, No. TA–W–1602.

3) A few Claimants were denied TRA benefits because they failed to present any written documentation tending to prove that they had met the wage and employment requirements[4] set forth under the

---

TION," 29 C.F.R. § 91.3 "Definitions," the regulation defines "adversely affected worker" as follows:

"(4) 'Adversely affected worker' means an individual who, because of lack of work in adversely affected employment:
(i) Has been totally or partially separated from such employment, or
(ii) Has been totally separated from employment with the firm in a subdivision of which such adversely affected employment exists."

3. Under 29 C.F.R. § 91.3 Definitions, "adversely affected employment" means

"... employment in a firm or appropriate subdivision of a firm if workers of such firm or subdivision are certified under § 90.16 of this title as eligible to apply for adjustment assistance."

4. Wage and employment requirements are found under 29 C.F.R. § 91.7(5)(c) as follows:
"*Wages and employment.* In the 52 weeks preceding the individual's last separation the individual must have at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm. Evidence that an individual meets this requirement shall be obtained as stated in § 91.8."

federal regulations for their qualifying periods of separation.

And finally, 4) some Claimants were denied benefits by the Agency's Review Board which had reversed the appeals referee's finding that the Claimants were included within the certification petition and were engaged in employment related to the production of carbon steel plate and structural shapes at Inland. Having reversed the deputy, the referee also concluded that this last group of Claimants had not applied for TRA benefits soon after their separations because they were dissuaded from filing applications by representatives of the Agency. Therefore, the Claimants did not fail without good cause to apply timely to the Agency for TRA benefits. The Review Board, however, reversed the referee and reinstated the deputy's determination that the claimants were maintenance workers, and thus not adversely affected workers coming under the protection of certification TA–W–1602. Furthermore, the Review Board stated the evidence shows that the Agency office would only discourage laid-off Claimant bricklayers from applying since it felt they were not eligible, but there is no evidence to conclude the Agency actually disallowed Claimant bricklayers to file applications for TRA benefits.

On appeal from the Review Board's decision, this court consolidated the above-described Claimants (named in footnote 1) since the various appeals essentially raised the same questions.

## ISSUES

The Claimants present three arguments on appeal which we restate as follows:

I. The Review Board erred in finding that the Agency had not failed to comply with the Act and attendant regulations in discouraging Claimants from filing applications for TRA benefits and by placing time limits on filing such claims in its Agency directive of April 20, 1981;

II. The Review Board erred in finding that the Claimants were not qualified to receive TRA benefits be-

cause they were maintenance workers and were not separated from employment related to the production of carbon steel plate and structural shapes; and

III. The Agency failed to comply with the Act and federal regulations which require it to take affirmative steps to obtain pertinent information of a Claimant before denying a TRA claim.

## DISCUSSION AND DECISION

 As we reverse, only Issues I and II will be discussed. When reviewing an administrative decision, judicial review shall be limited to a determination of whether the agency possessed jurisdiction over the matter and whether its order was made in accordance with the proper legal procedure, was based upon substantial evidence, and did not violate any constitutional statutory or legal principles. *City of Indianapolis v. Tabak,* (1983) Ind.App., 441 N.E.2d 494. In dealing with an appeal from the Review Board, the Court of Appeals does not reweigh the evidence, and findings of the Board are conclusive unless reasonable men, considering only evidence supporting those findings, would be bound to reach a different conclusion. *Marozsan v. Review Board,* (1982) Ind.App., 429 N.E.2d 986; *Jean v. Review Board,* (1981) Ind.App., 429 N.E.2d 4.

*Issue I. Agency action*

The Claimants' first argument is as follows:

"The Agency's action in discouraging and/or refusing to accept TRA claims, whether intentional or not, (during the instant certification period) and its April 20, 1981 Directive which placed a time limitation on the filing of TRA claims is outside the authority of the Agency and, indeed, conflicts directly with the federal TRA law."

Claimants rely on several subsections of the Act and its companion regulations to support their argument that the Agency has an

affirmative duty in administering the TRA benefit program to assist them in filing applications.

Before examining specific sections, we first note that the purpose of the Act is to provide economic benefits to workers separated from employment certified by the Secretary to be adversely affected by foreign competition.[5]

■ Under 19 U.S.C. § 2311(a), the TRA benefit program is administered by the Indiana Employment Security Division in accordance with the Act and regulations. An Agency determination with respect to a claimant's entitlement to TRA benefits is subject to review in the same manner as unemployment insurance claims. *Id.*

Returning to Claimants' first argument, they cite two federal regulations as authority for the proposition that the Agency is not complying with the federal TRA program: 29 C.F.R. § 90.22 and § 91.6.

Section 90.22 is captioned "Dissemination of program knowledge and assistance to workers." It provides:

"Whenever the Commission makes an affirmative finding under section 201(b) of the Act that increased imports are a substantial cause of serious injury or threat thereof with respect to an industry, the Secretary shall, to the extent feasible, make available to the workers in such industry full information about programs which may facilitate their adjustment to the import competition. He shall provide assistance to such workers in the preparation and processing of petitions and applications for program benefits."

■ The Claimants maintain that the Agency did not comply with its obligation to assist them in applying for TRA benefits. Testimony from Claimants taken at their hearings before the Agency's appeals referee showed that when they tried to sign up for TRA benefits, Agency representatives said Claimants were ineligible because they had worked in maintenance and not production. There is evidence which supports the Review Board's finding that the Agency may have discouraged some Claimants from applying for TRA benefits because their jobs did not directly involve the production of steel. The Agency had concluded that the Claimants were not certified as adversely affected workers under certification TA–W–1602 since their employment was primarily the maintenance of furnaces and ovens rather than the actual production of steel. The evidence does not prove that the Agency prevented would-be Claimants from applying for TRA benefits. Furthermore, the evidence does not show that the Agency, as the Secretary's designate, failed to provide assistance to workers in the preparation and processing of applications. The Agency determined that those laid-off bricklayers who had inquired about TRA assistance but did not apply were not eligible for federal assistance, and therefore the Agency was not obliged to assist them.

The second part of the Claimant's first argument concerns 29 C.F.R. § 91.6(a) which provides:

"An individual covered by a certification or petition for certification under § 90.16 of this title may apply at any time to a State agency for a trade readjustment allowance. Applications shall be in accordance with instructions and on forms approved by the Secretary which shall be furnished to the individual by the State agency. Determinations with respect to an application shall be made at any time to the extent necessary to estab-

---

**5.** Pursuant to 19 U.S.C. § 2272, the Secretary certifies a group of workers as eligible to apply for TRA benefits if he determines:

"(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production."

lish or protect an individual's entitlement to a trade readjustment allowance or other adjustment assistance, but no payment of a trade readjustment allowance may be made by a State agency until a certification is made under § 90.16 of this title and the State agency determines that the individual is covered thereby."

Claimants interpret this regulation to mean that there is no time limitation[6] on filing applications for TRA benefits so long as the claimant meets the qualifying requirements set forth under 29 C.F.R. § 91.7, which are not in dispute. More specifically, the Claimants contend that the Agency's April 20, 1981 directive creates a two-year filing period which is contrary to the clear meaning of the Act which permits eligible individuals to apply at any time for TRA benefits.

19 U.S.C. § 2294 yields to the application of state law where not in conflict with the Act, and provides as follows:

"Except where inconsistent with the provisions of this chapter [19 U.S.C.S. §§ 2271 et seq.; 2311 et seq.] and subject to such regulations as the Secretary may prescribe, the availability and disqualification provisions of the State law—

(1) under which an adversely affected worker is entitled to unemployment insurance (whether or not he has filed a claim for such insurance),

or

(2) if he is not so entitled to unemployment insurance, of the State in which he was totally or partially separated, shall apply to any such worker who files a claim for trade readjustment allowances. The State law so determined with respect to a separation of a worker shall remain applicable, for purposes of the preceding sentence, with respect to such separation until such worker becomes entitled to unemployment insurance under another State law (whether or not he has filed a claim for such insurance)."

In *Bradshaw v. Daniels,* (App.1980) 268 Ark. 716, 595 S.W.2d 254, the court held that in determining an adversely affected worker's right to TRA benefits, a state agency will apply the availability and disqualification provisions of the paying state's law. Although *Bradshaw* did not involve a time limit on applying for federal assistance, § 2294 does permit states to apply their laws and regulatory provisions except where inconsistent with the Act.

In the case at bar, the April 20, 1981 directive stated that TRA claims filed at the time of this notice by individuals who have been separated from employment as long as two years will be denied if they could have filed their claims earlier. It further provided that the Agency's reasons for denying the claim would be 1) for lack of current separation or 2) for expiration of the certification period. The Claimants filed their initial claims in May and June, 1981, for separations from employment which occurred during the certification period. Their applications, however, were filed after publication of the April 20, 1981 directive.

The State's brief argues that

"... the Indiana Employment Security Division placed no time limit upon the filing of TRA applications. The time limit which did exist was established by Congress itself."

The State then cites 19 U.S.C. § 2273(b) as limiting the time for filing TRA applications. It provides:

"A certification under this section shall not apply to any worker whose last total or partial separation from the firm or appropriate subdivision of the firm before his application under section 231 [19 U.S. C.S. § 2291] occurred—

---

**6.** Claimants cite the following determination by the Secretary: *Louis Signoretti* (Case No. 75–TRA04) (June 11, 1976) as further proof that no time limitation for filing applications was intended by the Act and regulations. Claimants have cited passages from this determination without supplying this court with a complete and certified copy. Our own research has not uncovered this purported case, and therefore we cannot consider it as authority. *See Hagood v. State,* (1979) Ind.App., 395 N.E.2d 315, where Judge Hoffman held that unpublished decisions are binding *only* upon the parties to the suit.

(1) more than one year before the date of the petition on which such certification was granted, or

(2) more than 6 months before the effective date of this chapter [see effective date note to this section]."

Even from a quick reading, it is clear that this statute only refers to the *earliest* date coverage begins once certification is granted. This statute does not provide any time limits for when a covered worker *must* apply for TRA benefits. *See Anderson v. Review Board,* (1980) Ind.App., 412 N.E.2d 819.

The State next cites 19 U.S.C. § 2291(1), apparently arguing that the Claimants were correctly denied TRA benefits because their work separations occurred before the date of certification which makes them ineligible to receive federal assistance. Therefore, in publishing the April 20, 1981 directive, the Agency "was doing no other than to comply with federal statutes." The State's argument is not well taken.

19 U.S.C. § 2291, in relevant part, provides that an eligible worker qualifies for assistance if:

"(1) Such worker's last total or partial separation before his application under this chapter [19 U.S.C.S. §§ 2271 et seq.; 2311 et seq.], occurred—

(A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment, and

(B) before the expiration of the 2-year period beginning on the date on which the determination under section 223 [19 U.S.C.S. § 2273] was made, and

(C) before the termination date (if any) determined pursuant to section 223(d) [19 U.S.C.S. § 2273(d)]. . . . ."

■ The State has misstated the facts in concluding: "(t)he dates of separation of the several Appellants [Claimants] here was back in 1977." The various records indicate all claimants experienced their *last* total or partial separations in 1978 or 1979, well within the certification period. More significantly, the Secretary certified workers who became separated from employment on or after December 7, 1975 as eligible for TRA benefits. Under § 2291, it is the worker's last separation before his application for TRA benefits which determines his eligibility. Here, Claimants' last separation was during the certification period. We therefore conclude that the Agency's April 20, 1981 directive does not comport with the purpose of the Act or the specific requirements set forth under 19 U.S.C. § 2273(b) and § 2291 of the Act. In relying on these two statutes, the State has failed to provide a cogent argument supportive of the Agency's directive.

■ It is our opinion 29 C.F.R. § 91.6 clearly permits the Claimants to apply *at any time* to a State agency for TRA benefits. In view of the general purpose of the Act[7] and 19 U.S.C. § 2294 which prohibits states from imposing state provisions inconsistent with the Act, we hold that the Agency directive of April 20, 1981 directly

7. 19 U.S.C. § 2102, entitled "Statement of purpose," provides:

"The purposes of this Act are, through trade agreements affording mutual benefits—

(1) to foster the economic growth of and full employment in the United States and to strengthen economic relations between the United States and foreign countries through open and nondiscriminatory world trade;

(2) to harmonize, reduce, and eliminate barriers to trade on a basis which assures substantially equivalent competitive opportunities for the commerce of the United States;

(3) to establish fairness and equity in international trading relations, including reform of the General Agreement on Tariffs and Trade;

(4) to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firms, workers, and communities to adjust to changes in international trade flows;

(5) to open up market opportunities for United States commerce in nonmarket economies; and

(6) to provide fair and reasonable access to products of less developed countries in the United States market.

(Jan. 3, 1975, P.L. 93–618, § 2, 88 Stat. 1981.)"

conflicts with the Act and its regulations, and therefore is unlawful. So long as a Claimant's last separation before his application occurred during the certification period, he is eligible for TRA benefits pursuant to 19 U.S.C. § 2291.

*Issue II. Adversely affected workers*

Although we have reversed the decision of the Review Board for the reasons stated above, the issue of whether Claimants are covered workers under the certification TA–W–1602 will be discussed to avoid possible future appeals.

Inland makes many forms of steel products, such as pig, carbon steel plate, structural shapes and hot rolled bar. However, the Secretary's certificate only covered the division or subdivision which produced carbon steel plate and structural shapes. During oral argument of the present appeal, counsel to Claimants disclosed that the same furnaces used to produce carbon steel plate and structural shapes were used to produce other iron and steel products.

The Agency denied Claimants' relief because it considered bricklayers maintenance workers, not workers engaged in employment related to the production of carbon steel plate and structural shapes at Inland. The Claimants maintain that their job constitutes "a support service that was related to the production of carbon steel plate and structural shapes."

The State argues that the petition for certification of eligibility [8] was filed only by the United Steelworkers of America, not the brickmasons' union. Furthermore, the State contends that pursuant to 19 U.S.C. § 2273, the Secretary determines whether the petitioning group meets the eligibility requirements. § 2273(a) provides:

"Certification of eligibility. As soon as possible after the date on which a petition is filed under section 221 [19 U.S.C.S. § 2271], but in any event not later than 60 days after that date, the Secretary shall determine whether the petitioning group meets the requirements of section 222 [19 U.S.C.S. § 2272] and shall issue a certification of eligibility to apply for assistance under this chapter [19 U.S.C.S. §§ 2271 et seq; 2311 et seq.] covering workers in any group which meets such requirements. Each certification shall specify the date on which the total or partial separation began or threatened to begin."

This section of the Act permits the Secretary to certify *all* those workers eligible for TRA benefits who meet the eligibility requirements set forth under 19 U.S.C. § 2272. The plain wording of 19 U.S.C. § 2273(a) allows the Secretary to cover a larger group of workers than the petitioning group. In the instant case, the Secretary's certification TA–W–1602 covered "all workers engaged in employment related to the production of carbon steel plate and structural shapes." [9] The Secretary's certification does not limit coverage to a particular subdivision or union group at Inland as the State attempts to argue. The State

---

**8.** Petitions must be filed by groups of workers seeking federal assistance pursuant to 19 U.S.C. § 2271 which provides:

"(a) A petition for certification of eligibility to apply for adjustment assistance under this chapter [19 U.S.C.S. §§ 2271 et seq.; 2311 et seq.] may be filed with the Secretary of Labor (hereinafter in this chapter [19 U.S.C.S. §§ 2271 et seq.; 2311 et seq.] referred to as the 'Secretary') by a group of workers or by their certified or recognized union or other duly authorized representative. Upon receipt of the petition, the Secretary shall promptly publish notice in the Federal Register that he has received the petition and initiated an investigation.

(b) If the petitioner, or any other person found by the Secretary to have a substantial interest in the proceedings, submits not later than 10 days after the date of the Secretary's publication under subsection (a) a request for a hearing, the Secretary shall provide for a public hearing and afford such interested persons an opportunity to be present, to produce evidence, and to be heard.

(Jan. 3, 1975, P.L. 93–618, Title II, Chap. 2, Subch. A, § 221, 88 Stat. 2019.)"

**9.** *See Jones v. Review Board,* (1980) Ind.App., 405 N.E.2d 601, where the court remanded the case to the Review Board to include in its findings the reasoning used in arriving at the conclusion of claimant's ineligibility for TRA benefits.

contends the Claimant bricklayers performed support services throughout Inland's operation and did not just work in the division producing carbon steel plate and structural shapes. It is equally true, however, that Inland steelworkers who received TRA benefits not only produced carbon steel plate and structural shapes but also worked in other non-certified divisions at Inland.

In *Dewhirst v. Review Board,* (1981) Ind. App., 419 N.E.2d 150, claimant was employed in a steel company's sheet mill division which had been found by the Secretary to be employment adversely affected by imports. Subsequently, claimant was transferred to the company's tin mill division which had not been certified as adversely affected. Less than two weeks after his transfer, claimant was totally separated from employment and was denied TRA benefits since he was not separated from adversely affected employment as required by the Act. Upon reversing the Review Board and holding claimant was an adversely affected worker entitled to receive TRA benefits, Judge Young stated:

"We are persuaded that the Review Board incorrectly interpreted 19 U.S.C. § 2291. That section does not expressly require the layoff of an employee directly from the adversely affected subdivision. It requires that an 'adversely affected worker' be separated from employment with a firm in which, or in a subdivision of which adversely affected employment exists. As there is room for more than one interpretation of the statute, it should be construed in such a way as to give effect to the general intent of the legislature. *Anderson v. Review Board of the Indiana Employment Security Division,* (1980) Ind.App., 412 N.E.2d 819. The overall purpose of the Trade Act of 1974 was to reduce or eliminate tariff and non-tariff barriers to international trade in order to realize the benefits of a trade linked world. *Id.* at 822. Congress established a special program of worker adjustment assistance in the belief that the special nature of employment dislocation resulting from these changes in trade policy necessitated a level of worker protection greater than that available through regular state unemployment insurance programs. Because entire industries may be adversely affected by increased imports, workers may not have realistic opportunities to find new employment. Moreover, the affected industry or industries may be concentrated in a particular region thereby compounding the difficulties of absorbing the displaced workers into other types of employment. *See generally* S.Rep. No. 93–1298, 93d Cong., 2d Sess. 5–19 (1974), reprinted in (1974) U.S.Code Cong. & Admin.News, p. 7273. Congress, in the Trade Act of 1974, attempted to ease the TRA qualifying criteria in the hope that more benefits would be provided to more workers. *Anderson, supra,* at 822. It is against this statutory background that we must determine the reasonableness of the Review Board's interpretation of 19 U.S.C. § 2291."

419 N.E.2d at 152. Ironically, the State acknowledges in its brief that bricklayers are engaged in employment related to the production of steel as follows:

"Grantedly the refinement of raw material and the maintenance of the ovens by which it was refined was essential in the production of carbon steel plate and structural shapes. It cannot be denied that failure of the brick masons to perform their detail might well have caused the operation to cease."

Despite this revelation, the State insists that Claimants did not participate in the operation of the steel mills in which the affected products were produced.[10] In support of its position, the State cites *International Union, etc. v. Marshall,* (D.C.Cir.1980) 627 F.2d 559; *Fortin v. Marshall,* (1st Cir. 1979) 608 F.2d 525; and *Paden v. U.S. Department of Labor,* (7th Cir.1977) 562 F.2d 470.

---

10. *See Sosa v. Review Board,* (1982) Ind.App., 433 N.E.2d 29, where the court held that an employee of a certified firm or a certified subdivision may qualify for TRA benefits if the employee is totally separated from employment due to lack of work in the certified subdivision.

*International Union, Fortin* and *Paden* are all easily distinguishable from the instant case. In *International Union,* the Secretary's certification specifically was limited to an individual assembly plant since other subdivisions were not affected by added import competition. No such limitation is involved in the case at bar.

In *Fortin,* certification was denied to airline workers because no "article" was produced as required by the Act under 19 U.S.C. § 2272(3).[11] The Secretary denied the airline employees TRA benefits, stating that their employment did not involve the production of an "article" within the meaning of 19 U.S.C. § 2272(3). In the case at bar, the Claimants unquestionably are engaged in the production of an "article"— carbon steel plate and structural shapes.

Finally, in *Paden,* the Secretary's certification was limited to a color television subdivision of Motorola, Inc., and excluded the automotive sound equipment subdivision since there was no increase in imports for that subdivision. As in *International Union, supra,* the certification was specifically limited to a particular subdivision. In contrast, the Secretary's certification in the present case covered all workers engaged in employment related to the production of carbon steel plate and structural shapes.

Essentially, the Review Board has automatically excluded Claimant bricklayers from TRA benefits because they are not steelworkers. This is wrong. The Secretary's certification includes the Claimant bricklayers. The bricklayers represent an integral unit in the production of steel wherein many trades are *related.* While the State acknowledges that the bricklayers' employment is related to steel production, it insists that the bricklayers did not really produce steel. There is no question that the bricklayers who maintained the kilns and furnaces producing carbon steel plate and structural shapes were covered by

the Secretary's certification even if they represent a support service.

Of course, a bricklayer could be laid off for many reasons coincidental with the two-year certification period, some of which are not coincidental with the work slowdown due to foreign imports. Therefore, once there is the threshold determination by the Secretary certifying a particular firm or subdivision thereof, a factual question arises. The Review Board must determine that a bricklayer's separation in an adversely affected firm is the result of lack of work in employment related to the production of carbon steel plate and structural shapes.

In *Sosa v. Review Board,* (1982) Ind.App., 433 N.E.2d 29, the question was whether the claimant was an "adversely affected worker covered by a certification" as required by 29 C.F.R. § 91.7 and 19 U.S.C. § 2291 in order to be eligible for TRA benefits. In *Sosa,* the Secretary's certification was substantially similar to the one in the instant case, and provided:

"All workers of Rockwell International, Incorporated, Logansport, Indiana engaged in employment related to the production of suspension springs who became totally or partially separated from employment on or after June 16, 1979 are eligible to apply for adjustment assistance under Section 223 of the Trade Act of 1974."

443 N.E.2d at 30. The Review Board found that the claimant was ineligible because he worked in the production of mechanical springs. However, there was evidence the claimant also was engaged in the production of suspension springs which were covered by the certification. The claimant's employer argued that the certification was *intended* to apply only to those working in the separate plant producing suspension springs. Nevertheless, the court in *Sosa* took care to point out that

"[t]he certification refers only to 'suspension springs' and makes no distinction

---

11. 19 U.S.C. § 2272(3) in the context of the Act as a whole requires that an "article" be a tangible thing and not a service. § 2272(3) provides:

"that increases of imports of articles like or directly competitive with articles produced

by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production."

between those related to automotive uses and any other suspension springs produced by Rockwell."

433 N.E.2d at 31. The court in *Sosa* recognized that a worker in a non-certified subdivision could be eligible for TRA coverage if the worker's separation was a result of lack of work in the certified subdivision.

The repair of cracked furnaces used to produce carbon steel plate and structural shapes is employment directly related to the production of an "article" as required to be covered under the Act. The Claimants were adversely affected workers covered by a certification, and therefore were entitled to TRA benefits. Had the Secretary intended to limit certification at Inland to members of the United Steelworkers of America, such limitation could have been made as in *International Union, supra,* and *Paden, supra.* All Claimants whose last separation before filing a claim occurred during the certification period and whose layoff was a result of lack of work in the production of carbon steel plate and structural shapes are eligible for TRA benefits.

Judgment reversed and remanded for further proceedings.

ROBERTSON, P.J., and RATLIFF, J., concur.