Gustina LUCAS, Appellant,

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
William H. Skinner, David L. Adams and
Paul M. Hutson, as Members of and as
constituting the Review Board of the
Indiana Employment Security Division,
and Talon Division of Textron, Appel-
lees.

No. 2–1080A324.

Court of Appeals of Indiana,
Third District.

Feb. 26, 1981.

William E. Vance, Vance & Phillips,
Seymour, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee Review Board.

STATON, Judge.

Gustina Lucas appeals from the decision of the Indiana Employment Security Division Review Board denying her benefits under the Indiana Employment Security Act.[1]

On appeal, Lucas raises the following issue:[2]

Was the decision of the Review Board supported by substantial evidence?

We reverse and remand.

Gustina Lucas had worked the second shift (3 p. m. to 11 p. m.) at the Talon Division of Textron for three years. Due to a piecework study done by Talon, workers performing Lucas' job began operating two machines at one time instead of just one machine. As fewer workers were needed each shift to perform Lucas' job, the workers were given shift preference according to seniority. Lucas was assigned to the third shift (11 p. m. to 7 a. m.).

Lucas worked this shift for one month. She experienced difficulty in sleeping. On September 25, 1979, Lucas tendered her resignation effective September 28, 1979 at 7 a. m.

### Substantial Evidence

The Review Board reversed the appeals referee's determination that Lucas left her employment for "good cause."[3] Its findings and conclusions stated:

"The Review Board finds that claimant was employed until September 28, 1979, the effective date of her tendered resignation.

"It further finds that claimant's reason for leaving her employment was due to

1. IC 22–4–1–1 et seq.

2. In order to clearly focus on Lucas' contentions, we have combined and reworded the issues.

3. IC 22–4–15–1 would disqualify Lucas from receiving benefits if she voluntarily left employment without "good cause."

alleged illness brought on by a lack of sleep as a result of her working the 11 p. m. to 7 a. m. shift.

"It further finds that claimant's reason for lack of sleep was due to the presence of her children.

"It further finds that if claimant was under the care of a physician for health reasons due "to her sleeplessness, she could have been granted a medical leave of absence by providing employer with a medical statement to that effect.

"The Review Board concludes that claimant voluntarily quit her employment without good cause in connection with work."

Lucas argues that there is no substantial evidence to support the Review Board's finding that her lack of sleep was due to the presence of her children. We agree.

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion. *Siddiqi v. Review Board of Ind. Employment Security Division* (1979), Ind.App., 388 N.E.2d 613. Substantial evidence requires something more than a scintilla of evidence and something less than a preponderance of the evidence. *State ex rel. Dept. of Natural Resources v. Lehman* (1978), Ind.App., 378 N.E.2d 31. Lucas testified as follows when asked if she quit her job:

"A. Yes, because I had reasons like I tried working on the third shift, you

know. About half of that amount or, I'm not sure. I got real sick. I went to the doctor. He gave me shots. He gave me sleeping pills. I was having problems trying to sleep. I couldn't get no sleep. You know, I was just nervous. I tried working and I almost fall asleep on my machine and the (inaudible) would come around and holler at me to keep me awake or I'd have to go keep getting coffee, you know, to keep myself awake. Those pills, nothing would help me. And that morning I was coming home from work I about had two wrecks and I just couldn't take it. It was just too much for me."

She further testified: [4]

"A. See, I could work day shift or second shift, you know, but the third shift. It just ... I can't handle it. I mean I can't get to sleep. If you can't get to sleep, you can't work. And I've got kids and you know what it's like. If you got kids, you're screaming at them and everything. That was my problem, I couldn't get any sleep. I did okay as long as I was on second."

This evidence is not sufficient to support the conclusion that Lucas' lack of sleep was due to the presence of her children; [5] there-

4. This is the only evidence regarding her children.

5. The State has made several arguments regarding the lack of certain evidence. As the Review Board will be conducting further proceedings on this claim, we mention the following to help guide them.

Hearings before a referee are not strictly adversary. They are informal proceedings to determine the substantial rights of the parties. 640 I.A.C. 1–11–3. Referees, rather than being neutral and detached, have the right to examine all witnesses and to require available evidence to be produced when deemed necessary for the proper determination of the case. *Id.*

Unemployment compensation is a rather special and relatively technical area of the law. The intended beneficiaries of this law are highly unlikely to be skilled either in law or in semantics. They are particularly dependent upon the Employment Security Division to help

them in securing the benefits our legislature has provided.

Claims are to be decided upon their merits. When a claimant is not represented by an attorney, the referee is required to examine all the witnesses in order to insure a complete presentation of the case. 640 I.A.C. 1–11–3. In all hearings, rules of evidence and procedure of civil trials are not to be followed to such an extent that they obstruct or prevent a full presentation of fact or to jeopardize the rights of any interested parties. *Id.* The system is designed to make a determination of a claim on its merits.

As the Employment Security Division has been given the role (see above) of actively pressing the interested parties to produce all relevant proofs at their command and, when necessary, to independently take steps to get to the facts, we can not agree with the State's arguments that the lack of presentation of a medical doc-

fore, we reverse and remand for further proceedings not inconsistent with this opinion.

HOFFMAN, P. J., and GARRARD, J., concur.

tor as witness or prescriptions written by the doctor must go against Lucas. Once Lucas presented testimony on these areas, she had fulfilled her burden of coming forward. As Lucas did not have an attorney to represent her, the referee was required to insure a complete presentation of the evidence Lucas possessed on this issue that Lucas had raised. We may not now use the lack of this further supporting evidence against Lucas as the State argues we should. This claim should be decided on its merits after all the facts have been brought out.