**Ronald JONES, Appellant (Claimant Below),**

**v.**

**REVIEW BOARD OF the INDIANA EM-PLOYMENT SECURITY DIVISION, John C. Mowrer, David L. Adams, and Joe A. Harris, as Members of and Con-stituting the Review Board of the Indiana Employment Security Division, and U.S. Steel, Appellees (Employer Be-low).**

**No. 93A02–8611–EX–394.**

Court of Appeals of Indiana, First District.

June 15, 1987.

Elizabeth Gail Tegarden, Legal Services Program of Greater Gary, Inc., Gary, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

ROBERTSON, Judge.

Ronald Jones (Jones) seeks judicial review of the decision of the Review Board of the Indiana Employment Security Division (Review Board) denying his request for training under the Trade Act of 1974, 88 Stat.1978, 19 U.S.C. § 2101 et seq. (Act).

We reverse and remand.

Jones, a former employee of U.S. Steel for twenty-five years, is a worker adversely affected by competition from foreign imports. He has been certified by the Secretary of Labor to be eligible for benefits and training provided by the Trade Adjustment Assistance Program.[1] Jones was working toward an Associate Degree in Public Affairs with a concentration in criminal justice at Indiana University in May of 1985. He applied for training in the area of criminal justice. A deputy with the Indiana Employment Security Division determined that paralegal training would be a viable alternative within the program and excluded other occupations within the criminal justice occupational area which were of interest to Jones, for "lack of employment opportunities." Jones requested a hearing before an appeals referee, appeared *pro se* and presented evidence to rebut the deputy's determination. The appeals referee affirmed the denial of Jones's request for training, entering findings of fact and conclusions of law which the Review Board adopted. We remanded with instructions to the Review Board to enter findings and conclusions which would facilitate judicial review. 505 N.E.2d 881. The Review Board having entered specific findings of fact and conclusions of law in support of its decision, we must now consider whether Jones was denied training in accord with the Trade Act of 1974.

The Review Board made the following entry:

FINDINGS OF FACT:

1. Claimant is a former employee of U.S. Steel having worked for said employer for 25 years (1–22–60 to 5–3–85). (Division Exhibit # 1 TR pg 7).

2. A request for determination of entitlement to TRA (Trade Readjustment Act) benefits by Claimant was initiated on April 4, 1986, and processed as petition number 14767 (Division Exhibit # 1 TR pg 7 & 8).

3. A determination of eligibility was completed by the Gary Employment Security office on July 24, 1986, based on Claimant's request for training which would lead to an associate degree in public affairs with concentration in criminal justice. (Division Exhibit # 3 TR pg 11.)

4. Claimant's requested program of training was determined to be excluded "for lack of employment" opportunities (Division Exhibit # 3 TR pg 11) and a "reasonable expectation of employment after training does not exist". (Id.)

5. Claimant completed a Combined Report on Disputed Claim form on August 1, 1986 and filed the same with the Gary employment service office on the same date. (Division Exhibit # 4 TR pg 12)

6. A notice of appeals referee hearing was issued to all parties on August 8, 1986. (Division Exhibit # 5 TR pg 13 & 14); and the appeals hearing was conducted on August 19, 1986, (see referee docket Division Exhibit # 6 TR pg 15) at Gary, Indiana. (TR pg 15)

7. The position of the Gary employment service office was presented by Mr. Freeman Franks, an Employment Service Specialist, TRA (TR pg 16) and stated that one of the requirements for determining eligibility for a TRA training program is that "the person must have a reasonable expectancy of securing suitable employment in the occupation upon completion of training." (TR pg 19, lines 20–21); that the desired training pro-

---

**1.** Created by the Trade Expansion Act of 1962, Pub.L. No. 87–794. The program was substantially expanded and modified by the Trade Act of 1974, Pub.L. No. 93–618, 88 Stat.1978.

gram was within the possibilities of Claimant's abilities as evidenced by the result of Claimant's aptitude test scores (TR pg 16, lines 14–24); and that the training requested was part of the minimum requirements in obtaining a position in that field sought (TR pg 19, line 33, TR pg 20, line 10).

8. Claimant noted that he had enrolled in a college and was doing B-grade level work (TR pg 23, lines 1–2). That he was over "half-finished with this program" (TR pg 23, line 10); that he had one more year to complete in order to receive or be awarded a criminal justice degree (TR pg 23, line 12–14). Claimant further stated "there will be more jobs in security in the future and also criminal justice jobs outlook favorable today," (TR pg 24, lines 26–28). Claimant's Exhibit # 1 and # 2 (TR pg's 39–42) were offered to substantiate his contention that the potential for employment in the criminal justice field was favorable today; however, no correlation was shown between the course of training sought by Claimant at Indiana University in Gary, Indiana and the minimum requirements of jobs for guards, police officers, correction officers, juvenile correction officers, or any of the other positions detailed in related law enforcement areas in addition to others who work as judges, bailiffs, clerks, public defenders, prosecutors and investigators.

9. Claimant's pro-offered course list of classes at Indiana University, Gary, Indiana, was determined by the TRA Specialist to be an "over view type" of course, (TR pg 19, lines 1–7), which was not aimed or directed toward any specific or determinable class within the general classification of the criminal justice field; and a reasonable expectancy of employment at the completion of the training was not shown. Claimant's Exhibits 1 and 2 indicated an increase in employment possibilities within the broad spectrum of the "Criminal Justice" field, but showed not one bit of existing need for Claimant or others like him who may complete the course of study sought at Indiana University, Gary, Indiana.

The general field of criminal justice as presented by Claimant as evidenced by Claimant's exhibits 1 and 2 (TR pg's 39–42) shows a wide range of positions (i.e. from city police to judges and prosecutors) that vary in requirements from a high school diploma to college and law degrees. Claimant did narrow his stated desire of job attainment to insurance investigator (TR pg 23, lines 22–23) when he said at the appeals hearing, "I would like to do special investigator's work with insurance companies." However, there has been no showing by Claimant that such a position requires any skills or training program requirements beyond a high school diploma if that much, or that the course sought was programed for that position.

10. The TRA Specialist did conduct a survey, albeit not one of professional standards, of the local market regarding the general course of study for criminal justice associate degree sought by Claimant and found no need for persons so trained (TR pg 18, lines 7–31).

The TRA Specialist, in his discussion with Claimant, explained that most areas of law enforcement and correctional officers did not require training beyond a high school diploma; and that the specific police training beyond that was conducted in-house or at the state facility at Plainfield, Indiana. (TR pg 20, lines 1–10).

11. Claimant's request for TRA funding could be interpreted as a request to study and take courses in a very general field of employment possibilities whereas the TRA program was designed to approve training of a worker eligible for trade adjustment assistance; [see 19 U.S.C. Sec. 2296(a) (1976)] *if* suitable employment was available for the worker and *if* the worker received appropriate training. All of which is further conditioned upon the base premise that there is a reasonable expectation of employment following completion of such training.

A fair definition of "reasonable" would eliminate extreme possibilities when con-

sidering employment consideration for any applicant for TRA funding; and a reasonable definition of "expectancy" is anticipation of a probable occurrence such as an expectant number of years of life for a male or female based on statistical probabilities. Thus, in our particular order of TRA training, the program is aimed at providing training to eligible workers in programs with an anticipated probability that employment of the worker would follow upon completion of the training program.

12. Claimant's chosen field of study toward acquiring an associate degree in public affairs with a concentration in criminal justice has not been shown to meet the needs in a well-determined class of the work force with a reasonable expectation of employment following Claimant's completion of such training. Thus, in view of the above, the determination to deny claimant's request for training in his chosen field of study is a reasonable interpretation of the parameters of the program and is not too strict a view of the statutes intent. Further, the matter of whether the use of "two years" rather than "104 weeks" in speaking of the length of any such approved programs is not dispositive to the issues of the instant matter.

CONCLUSIONS OF LAW:

1. The act for Trade Adjustment Assistance is intended to approve training up to 104 weeks for eligible unemployed workers in areas of employment available to the worker in the event he receives appropriate training; and if there is a reasonable expectation of employment upon completion of this training.

2. Claimant, Ronald Jones, a former employee of U.S. Steel is one of a group of unemployed workers for which the TRA program is intended to help.

3. Claimant timely filed for assistance within the TRA program, and submitted himself and completed an aptitude test for purposes of attempting to determine a well defined area of the work force for which Claimant might reasonably expect employment after the completion of a readjustment training course programmed toward that defined field.

4. A review of Claimant's eligibility request and aptitude test results by the Employment Service Specialist, TRA, indicated Claimant would be eligible for TRA training in the general category of law aimed at the para-legal field of employment and there was a reasonable expectation of employment in that field at the conclusion of the course program by the Claimant and that said program was within the approved program list anticipated for completion within the time established by the Act.

5. Claimant's requested course of study toward acquiring an associate degree in public affairs with a concentration in criminal justice did not meet requirements of the TRA program which would reasonably lead to Claimant securing employment after completion of the course.

6. Claimant's requested course of study can best be described as sort of a "liberal arts degree" course of study that provides a fair foundation for any individual completing such program in a wide spectrum of employment possibilities but no reasonable expectation of employment in any one well defined area within the parameters of the intended assistance available in the TRA program benefits.

7. Thus the decision to deny Claimant his specific request for assistance to take courses at Indiana University at Gary, Indiana, toward acquiring an associate degree in public affairs with a concentration in criminal justice, was proper as there is no anticipated probability that such a program would provide suitable employment for Claimant upon completion of such a program.

I.

Standard of Review

■ We review the Board's determination by applying the standard of review employed in the review of unemployment cases because eligibility determinations, when entrusted to State agencies administering state unemployment insurance pro-

grams, are to be reviewed "in the same manner and to the same extent as determinations under the applicable state law and only in that manner and to that extent." 19 U.S.C. § 2311(a); *International Union, United Auto., Aerospace & Agricultural Implement Workers v. Brock* (1986), 477 U.S. 274, 106 S.Ct. 2523, 2526, 91 L.Ed.2d 228; *York v. Review Board* (1981), Ind. App., 425 N.E.2d 707, 710.

In determining whether the Board erred, our sole function is to determine whether the Review Board's findings of fact contain all specific facts relevant to the contested issue and whether the Board resolved those issues in conformity with law. *Quillen v. Review Board* (1984), Ind.App., 468 N.E.2d 238, 241. A contention that the Review Board's decision is contrary to law presents two questions: first, whether the evidence is sufficient to sustain the findings of fact; and, second, whether the findings of fact are sufficient to sustain the Review Board's decision. *Citizens Gas & Coke Utility v. Review Board* (1984), Ind.App., 471 N.E.2d 1175, 1176, *trans. denied.*[2]

## II.

### The Act

The Trade Adjustment Assistance Program provides benefits and training to workers certified by the Secretary of Labor to have been adversely affected by competition from foreign imports. Under the program's scheme, the Secretary *shall* approve training for the certified worker, to the extent approved funds are available, if the Secretary determines that:

(A) there is no suitable employment (which may include technical and profes-

sional employment) available for the worker;

(B) the worker would benefit from appropriate training;

(C) there is a reasonable expectation of employment following completion of such training;

(D) training approved by the Secretary is available to the worker from either governmental agencies or private sources (which may include area vocational schools, as defined in § 195(2) of the Vocational Education Act of 1963, and employers), and

(E) the worker is qualified to undertake and complete such training,....

19 U.S.C. § 2296(a). Upon approval, the worker is entitled to have payment of the costs of training paid by the Secretary on his behalf. *Id.*

Formerly, the Trade Act of 1974 authorized the Secretary of Labor to approve training of a worker eligible for trade adjustment assistance if the Secretary determined (1) that there was no suitable employment available for the worker, and (2) that suitable employment would be available for the worker if the worker received appropriate training. 19 U.S.C. § 2296(a) (1976). However, the Act was substantially amended in 1981, requiring a more exhaustive and focused inquiry. Congress refined the simpler standard, that suitable employment be available after training, into an individualized determination involving the five criteria recited above. *See* 19 U.S.C. § 2296(a)(1)(B)–(E) (Supp. V, 1981). *Moore v. Review Board* (1983), Ind.App., 444 N.E.2d 910. The intent was to make assistance more accessible by easing the eligibility tests. *See* S.Rep. No. 1298, 93d Cong., 2d Sess. 131 (1974), reprinted in

---

**2.** Examining the Board's findings of fact and conclusions of law, we observe that under the heading "Conclusions of Law", some of the preliminary comments are in essence a continuation of the Board's factual findings rather than legal conclusions. Similarly, we note that the Board has characterized legal conclusions as findings of fact. Recognizing that as a general rule we must accord the Board's findings of fact substantial deference, we will not exalt form over substance. *See, Public Service Co. of Indiana, Inc. v. Review Board* (1983), Ind.App., 451 N.E.2d 371, 374. Accordingly, where we

determine that the Board has resolved questions of law, we will not accord that degree of deference granted a question of fact. The question whether the Board conformed to the statutory standards and legal principles involved in producing its order, i.e. whether the Board considered some factor or element which it is apparent improperly influenced the result, is purely a legal question and one properly for the courts to determine in any judicial review. *Public Service Commission of Indiana v. City of Indianapolis* (1956), 235 Ind. 70, 82–83, 131 N.E.2d 308, 312–313.

1974 U.S.Code Cong. & Ad.News 7186, 7205; *DeWhirst v. Review Board* (1981), Ind.App., 419 N.E.2d 150, 151, *trans. denied.* The Act's most recent amendments were considered with the expectation that with the changes, suitable and reasonably available training could be located or generated for most workers. *See,* S.Rep. No. 146, 99th Cong., 2d Session 349 (1986); 1986 U.S.Code Cong. & Ad.News 42, 311.

Again, among the qualifying criteria is the requirement that there be a reasonable expectation of employment following the approved training. The Act no longer explicitly requires that the expected employment be "suitable" as defined previously under the Act's older formulation.

Neither the Trade Act of 1974 as amended nor the regulations issued by the Secretary of Labor affirmatively defines the language "reasonable expectation of employment." The Act does provide that "[f]or purposes of applying paragraph (1)(C), a reasonable expectation of employment does not require that employment opportunities for a worker be available, or offered, immediately upon the completion of training...." 19 U.S.C. § 2296(a)(2) (Supp. 1986) (effective April 7, 1986). The Secretary of Labor has instructed state agencies that the criterion concerning reasonable ex-

pectation of employment does not mean employment immediately upon completion of training. Dept. of Labor, General Administration Letter No. 7–86, 51 F.R. 21027, 21028, (June 10, 1986).

According to the Secretary of Labor, if suitable employment is not available to an individual, it is the responsibility of the state agency to explore, identify, develop and secure training opportunities. 20 C.F.R. § 635.23(a), 48 F.R. 9444, 9454 (proposed March 4, 1983).[3] The state agency is responsible for the selection and approval of training which offers a reasonable expectation of employment following such training, 20 C.R.F. § 635.26(d), and must document the standards and procedures used to select occupations and training institutions. *Id.*

With respect to the selection of occupational areas in which training may be provided, the state agency is directed by the Secretary of Labor to "approve training in occupations for which an identifiable demand exists either in the local labor market or in other labor markets for which relocation planning has been implemented." 20 C.F.R. § 635.23(d)(1). The state agency must exclude certain occupations, among them, those for which a

---

**3.** Regulations implementing the Trade Act of 1974 have been codified at 29 C.F.R. § 91 et seq. The Secretary of Labor proposed revised regulations following the program's revision by the Omnibus Reconciliation Act of 1981. The revised regulations, published at 48 F.R. 9444 (March 4, 1983) were never finally promulgated. Similarly, subsequent to the Act's amendment in 1986 by the Consolidated Omnibus Reconciliation Act of 1984, Pub.L. 99–272, the Secretary issued General Administration Letter No. 7–86, 51 F.R. 21027 (June 10, 1986), providing operating instructions to state agencies for implementing and administering the amendments to the program. Formal rule-making procedures have not been instigated for these instructions either.

The parties agree that the proposed regulations do not have the force and effect of law given legislative rules issued by an agency pursuant to statutory authority to create new law, rights or duties. *See, Batteron v. Francis* (1977), 432 U.S. 416, 425 and n. 9, 97 S.Ct. 2399, 2405 and n. 9, 53 L.Ed.2d 448. However, it is well settled that an agency charged with a duty to enforce or administer .a statute has inherent authority to issue interpretative rules informing the public

of the procedures and standards it intends to apply in exercising its discretion. *American Medical Association v. Heckler* (S.D.Ind.1985), 606 F.Supp. 1422, 1440; *Production Tool Co. v. Employment & Training Administration* (7th Cir.1982), 688 F.2d 1161, 1166. Even interpretative rules are binding on the regulated parties in the sense that they set, for the time, the legal minima of behavioral standards, and inform the parties that actions not in conformity with an agency's interpretation of a statute may be viewed by the agency as a violation of the statute. *AMA v. Heckler, supra; Alcaraz v. Block* (9th Cir.1984), 746 F.2d 593, 614. The legislative/interpretative rule distinction is relevant to the extent it guides courts in determining the standard of judicial review. *Alcaraz, id.* In Indiana, an agency's interpretations of the statute are to be afforded great weight and are not to be disturbed so long as they have a rational basis. *Hearing & Speech Clinic v. Ind. Dept. of Welfare* (1984), Ind.App., 466 N.E.2d 462, 464–465; *Ind. Dept. of Pub. Welfare v. Crescent Manor* (1981), Ind.App., 416 N.E.2d 470, *trans. denied.* Neither party has argued that these regulations, as written are irrational.

(i) [l]ack of employment opportunities as substantiated by job orders and other pertinent labor market data [exists]; or
(ii) [o]ccupations which provide no reasonable expectation of permanent employment; or
(iii) [s]elf-employment and occupations for which remuneration is wholly or primarily in the form of a commission.

20 C.F.R. § 623.23(d)(3).

To briefly summarize the Act's requirements as implemented by the Department of Labor and as relevant to the instant case, the state agency is to approve training which offers, from an objective perspective, a reasonable expectation of employment upon completion. Training is to be approved in occupations where a demand can be identified in the labor market. An occupation must be excluded from consideration for training, again upon an objective basis (job orders *and* pertinent labor market data), when the occupation lacks employment opportunities.

### III.

#### Decision

Adopting the Review Board's definition of an expectation of employment and applying the requirements of the Act, we believe the central question to be addressed by the Review Board was whether, objectively, the claimant could anticipate probable employment following training in the area of criminal justice. We agree with Jones that the Review Board's findings and conclusions indicate that the Review Board did not give proper consideration to the requirements of the Act and the regulatory guidelines established to implement it in resolving this question. Moreover, we agree that the Review Board has relieved the state agency of the responsibility of documenting standards and procedures used to evaluate occupations and training institutions.

As we read the entry, the Review Board found that while the outlook for employment in criminal justice was favorable, finding 8, and evidence in the record "indicated an increase in employment possibilities within the broad" criminal justice field, finding 9, Jones's choice of course work was too general in nature to qualify him for training assistance; it was not directed toward a specific occupation. Furthermore, Jones had not shown "one bit of existing need for Claimant or others like him who may complete the course of study sought" by Jones, finding 9; neither had Jones shown an "anticipated probability that such a program would provide *suitable* employment ... upon completion of such a program." Conclusion 7, emphasis added. As far as an objective basis for excluding various criminal justice occupations, the Review Board made only one finding: "[t]he TRA Specialist did conduct a survey, albeit not one of professional standards, of the local market regarding the general course of study for criminal justice associate degree sought by claimant and found no need for persons so trained (TR pg 18, lines 7–31)." Finding 10.

As an initial matter we note that the record contains no evidence that the state agency considered any occupation within the criminal justice field other than paralegal or legal assistant, occupations in which Jones expressed no interest. The record indicates that the state agency surveyed five local attorneys for purposes of determining whether law offices would hire an individual studying criminal justice through the Indiana University Public and Environmental Affairs program. The agency concluded from this sampling that law offices would have more use for a paralegal. This is the only evidence in the record which has any tendency to show a lack of opportunity for individuals with an Associate Degree in Criminal Justice. Clearly, it is not a reliable, statistical basis under the facts of this case for concluding that there is no demand whatsoever in any of the occupations in which Jones expressed interest, particularly in light of the evidence presented by Jones, dated December 1984, predicting an increase in opportunities in the criminal justice field.

We believe it was incumbent upon the state agency to make greater efforts to obtain the information necessary for mean-

ingful review of the petition and to develop a methodology which will elicit complete and accurate data. This responsibility cannot be shifted to the claimant by finding that there was no showing of "existing need" for persons with the training sought by Jones. Jones appeared *pro se*. When a claimant appears without representation of counsel at an unemployment compensation hearing in Indiana, the referee is required to insure a complete presentation of the case. 640 I.A.C. 1–11–3; *Lucas v. Review Board* (1981), Ind.App., 416 N.E.2d 906, 907 n. 5; *DeWhirst v. Review Board* (1981), Ind.App., 419 N.E.2d 150, 151 n. 4. As the Employment Security Division has been given the role of actively pressing the parties to produce all relevant proofs at their command, and, when necessary, to independently take steps to get the facts, the lack of evidence cannot be used against the claimant. *Lucas, supra.* This is particularly true in this case where the Secretary of Labor has specified that it is the responsibility of the state agency to explore and identify training opportunities, and to select, with the use of documented standards and procedures, the occupations which offer a reasonable expectation of employment.[4]

■ With respect to those of the Board's findings which suggest that Jones must entertain a reasonable expectation of obtaining "suitable" employment, we again point out that the Act no longer explicitly requires a determination that suitable employment be available. However, since it is apparent that training will only be approved if "suitable" employment is not available for the worker, 19 U.S.C. § 2296(a)(1)(A), we believe it would be reasonable for the Board to consider whether the training requested can be expected to ultimately result in "work of a substantially equal or higher skill level than the worker's past adversely affected employment, and wages for such work at not less than 80 percent of the worker's average weekly

wage", 19 U.S.C. § 2296(f) (1986), as "suitable" employment is defined by the Act. The Review Board made no findings with respect to the comparative skill and wages levels; moreover, the record indicates that no evidence was taken directly on this point. In the absence of evidence of this nature, the Review Board could not have given proper consideration to the question of "suitable" employment; consequently, we must conclude that the Review Board's findings which incorporate this element are not supported by substantial evidence, and are therefore contrary to law.

■ Finally, we note that Congress anticipated that for some occupations and types of training, workers may need to commute or relocate. It specifically provided for subsistence payments, job search allowances and relocation allowances to assist the adversely affected worker to return to work in equivalent or better employment as quickly as possible. *See e.g.,* 19 U.S.C. § 2296(b); § 2297, § 2298. We conclude from the provision of these benefits that a worker may entertain a reasonable expectation of employment in labor markets other than the local market. Hence, in determining whether an identifiable demand exists in a particular occupation, the state agency should factually determine whether relocation planning might be implemented.

In light of the absence of a factual basis in the record to support the Review Board's determination that no reasonable expectation of employment following completion of the training requested exists for Jones, we must conclude that the Review Board's decision is contrary to law. We reverse and remand to the Review Board for reconsideration and factual determination in accord with the directives of the Secretary of Labor and the provisions of the Act. To the extent that the Review Board's definition of a reasonable expectation of employment incorporates a requirement of expecting

---

**4.** Generally, administrative decisions must be based upon ascertainable standards to insure that agency action will be orderly and consistent. Standards should be stated with sufficient precision to provide those having contact with the agency fair warning of the criteria by which they will be judged. *Midwest Street Erection Co. v. Commissioner of Labor* (1985), Ind.App., 482 N.E.2d 1369, 1371, *trans. denied.*

"suitable" employment, it will be necessary for the Review Board to factually develop the record on that question as well.

Reversed and remanded.

RATLIFF, C.J., concurs.

MILLER, J., concurs in part and dissents in part with separate opinion.

MILLER, Judge, concurring and dissenting in part.

I concur in part and dissent in part.

I concur in Judge Robertson's resolution of the issues presented in this case, but disagree with the court's disposition. I would not remand to the Review Board a second time for reconsideration and development of a factual record. Rather, I would reverse for the reasons stated by Judge Robertson and enter final judgment in favor of claimant Ronald Jones pursuant to Appellate Rule 15(N), which provides:

"(N) Order or Relief Granted on Appeal. An order or judgment upon appeal may be reversed as to some or all of the parties and in whole or in part. *The court, with respect to all or some of the parties or upon all or some of the issues, may order:*

(1) A new trial;

2. *Entry of final judgment;*

3. Correction of a judgment subject to correction, alteration, amendment or modification;

4. In the case of claims tried without a jury or with an advisory jury, order the findings or judgment amended or corrected as provided in Rule 52(B);

(5) In the case of excessive or inadequate damages, entry of final judgment on the evidence for the amount of the proper damages, a new trial, or a new trial subject to additur or remittitur; or

(6) Grant any other appropriate relief, and make relief subject to conditions. *The court shall direct final judgment to be entered or shall order the error corrected without a new trial unless such relief is shown to be impracticable or*

*unfair to any of the parties or is otherwise improper;* and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. A judgment may be affirmed on conditions. A verdict, finding, judgment, order or decision shall be reversed upon appeal as not supported by or as contrary to the evidence only when clearly erroneous, and due regard shall be given to the opportunity of the finder of fact to judge the credibility of witnesses." (emphasis added).

In this case, the claimant's position is strong. Jones is enrolled in a recognized and state supported institution of higher education. He presented evidence showing the increasing availability of jobs in his chosen field of study, criminal justice. Neither the Review Board nor the employer rebutted this showing after two opportunities at hearings to do so. To remand to the Review Board, with instructions to develop a factual record and reconsider, accomplishes nothing[1] except to further delay final resolution of these matters and to harass Jones who is making a commendable attempt to reenter the job market and has already met his burden of proving a prima facie case before the Review Board. I believe it frustrates the purpose of the federal Trade Act of 1974 to remand a second time when these matters have been reviewed twice by our appellate court. In addition, the passage of time is problematic because the job market changes from time to time and may, in fact, be different now than it was at the initial Review Board hearing, potentially prejudicing either party.

For these reasons, I concur in Judge Robertson's opinion with the exception that I would enter final judgment in favor of claimant Ronald Jones pursuant to Appellate Rule 15(N).

---

1. We note that the costs of the proceedings before the Review Board, the first appeal to this court, the second proceedings before the Review Board, and this second appeal likely exceed the amount of money Jones should receive for the cost of his reeducation.