William JONES, Douglas Slaughter, Micko Donyorovic, Renea Garza, Frederick Conner, Roy Carr, Jose Bellver and Ronald T. Moore, Appellants (Claimants below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, and Youngstown Sheet and Tube Company, Appellees.

No. 2–679A175.

Court of Appeals of Indiana, Fourth District.

June 16, 1980.

Albert C. Hand, Hand & Muenich, Hammond, for appellants.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellees.

CHIPMAN, Judge.

This cause is an appeal by William Jones, Douglas Slaughter, Micko Donyorovic, Renea Garza, Frederick Conner, Roy Carr, Jose Bellver and Ronald T. Moore (Claimants) from a decision of the Review Board of the Indiana Employment Security Division (Board) denying their petition for Trade Readjustment Benefits under 19 U.S.C. § 2251 (1974) et seq.[1]

We will discuss only two issues. They are:

  I.  Whether Claimants have timely perfected their appeal and

  II.  Whether the Board's findings are sufficient to allow proper review by this court.

Affirmed in part and remanded in part.

### I. TIMELY FILINGS

Claimants first contend the Board erred in dismissing the appeals of all claimants except William Jones. The record shows all claimants except Jones failed to perfect their appeal in a timely fashion, therefore no error occurred.

1. An act providing additional unemployment benefits to certain types of steel workers who lost their jobs as a result of importation of less expensive foreign steel.

■ Claimants Slaughter, Donyorovic, Garza, Carr, Bellver and Moore failed to file an appeal of the referee's decision with the Board. These claimants cannot directly appeal the referee's decision to this court. See Ind.Code 22–4–17–3 and 22–4–17–11; Reidenbach v. Board of School Trustees of West Noble School Corp., (1980) Ind.App., 398 N.E.2d 1372.

■ Claimant Conner did perfect an appeal to the Board, however, he failed to timely perfect his appeal from that decision to this court. The Board's decision was mailed on April 10, 1979. William Jones mailed a letter to the Board indicating his intent to appeal the decision on April 20, 1979.[2] Conner's name first appeared on a Notice of Amended Appeal filed by Jones on May 10, 1979, which stated:

"Please take notice that appellants, William Jones, Douglas Slaughter, Micko Donyorovic, Renea Garza, Frederick Conner, Roy Carr, Jose Bellver and Ronald T. Moore, pursuant to the Indiana Security Act, Chapter 17, Section 11 (IC 1971, 22–4–17–11) et seq., do hereby amend their notice of appeal to the Review Board of the Indiana Employment Security Division and Youngstown Sheet and Tube Company which was mailed on April 23, 1979, and received and acknowledged on April 25, 1979 by the Review Board of the Indiana Employment Security and acknowledgment forwarded on April 27, 1979, to clarify that such notice was intended to relate to all of the appellants in accordance with the handling of the claimants as a class and as set out and referred to in the decision of the Review Board which was mailed on April 10, 1979."

We cannot say that the reference in this correspondence is sufficient to be considered a notice of appeal by Conner. In addition, it was not mailed until after the fifteen day limit set out in Ind.Code 22–4–17–11 had lapsed.

2. This letter of intent referred only to Jones's appeal:

"This letter will serve as an intent to appeal Mr. William Jones T.R.A. case No. 79–R–593."

■ The timely filing of an appeal is mandatory as a condition precedent to our obtaining jurisdiction of the cause. *Teepe v. Review Board of the Indiana Employment Security Division,* (1964) 136 Ind.App. 331, 200 N.E.2d 538. Thus, there was no error in dismissing the appeals of Slaughter, Donyorovic, Garza, Carr, Bellver, Moore and Conner.

## II. SUFFICIENCY OF FINDINGS

We cannot reach the merits of Jones's appeal since the findings of fact made by the Board are insufficient. We must, therefore, remand his cause to the Board for further findings. The issue is presented in the following scenario.

In response to the lag in the steel industry caused by the importation of less expensive foreign steel, the federal government offered additional unemployment benefits, Trade Readjustment Allowances, under the Trade Act of 1974, 19 U.S.C. 2251 et seq., to unemployed steel workers. Several workers who had been laid off from the Youngstown Sheet and Tube Company (Company) filed a petition to receive these benefits. A certification of eligibility for workers from the Company was issued by the Department of Labor,[3] which in part stated:

"In order to make an affirmative determination and issue a certification of eligibility to apply for adjustment assistance, each of the group eligibility requirements of Section 222 of the Trade Act of 1974 must be met:

(1) that a significant number of proportion of the workers in the workers' firm or an appropriate subdivision thereof, have become totally or partially separated, or are threatened to become totally or partially separated;

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely;

(3) that articles like or directly competitive with those produced by the firm or subdivision are being imported in increased quantities, either actual or relative to domestic production; and

(4) that such increased imports have contributed importantly to the separation, or threat thereof and to the decrease in sales or production.

The term 'contributed importantly' means a cause which is important but not necessarily more important than any other cause."

[set out in 19 U.S.C. § 2272 (1974)]

"This investigation has revealed that (a) for workers engaged in employment related to the production of tin mill cold rolled sheet and strip, hot rolled sheet and strip and galvanized sheet, criterion (2) has not been met; (b) for workers engaged in employment related to the production of bar and bar products, criterion (3) has not been met."

"This investigation has further revealed that all of the above criteria have been met for workers engaged in employment related to the production of pipe and tubing and steel plate."

. . . . . .

"*Conclusion*

After careful review of the facts obtained in the investigation, I conclude that increases of imports of articles like or directly competitive with tin plate, hot and cold rolled sheet and strip, galvanized sheet, and bar and bar products produced at the East Chicago, Indiana Plant of Youngstown Sheet and Tube Company did not contribute importantly to the total or partial separations of workers at that plant as required for certification under Section 222 of the Trade Act of 1974."

---

**3.** This procedure is in accord with 19 U.S.C. § 2273(a) (1974), which states:

"As soon as possible after the date on which a petition is filed under section 2271 of this title, but in any event not later than 60 days after that date, the Secretary shall determine whether the petitioning group meets the requirements of section 2272 of this title and shall issue a certification of eligibility to apply for assistance under this part covering workers in any group which meets such requirements. Each certification shall specify the date on which the total or partial separation began or threatened to begin."

"I further conclude that increases of imports like or directly competitive with steel plate, pipe and tubing produced at the East Chicago, Indiana plant of Youngstown Sheet and Tube Company contributed importantly to the total or partial separation of workers at the Plant. In accordance with the provisions of the Act, I make the following certification:

'All workers engaged in employment related to the production of steel plate and pipe and tubing at the East Chicago, Indiana Plant of Youngstown Sheet and Tube Company who became totally or partially separated from employment on or after November 1, 1975 are eligible to apply for adjustment assistance under Title II, Chapter 2 of the Trade Act of 1974.'"

A mass hearing was held on June 29, 1978, to determine eligibility of workers under the certification. The liability appeals referee issued his decision on July 25, 1978, and it was sustained by the Board. The findings and conclusions of the appeals referee were incorporated in full and they read as follows:

"The claimants and each of them were found not to be entitled to Trade Readjustment Allowance since they were not separated from adversely affected employment.[4] The claimants indicated by their testimony that they were involved in a fundamental processing area which serviced the affected area those being the seamless and the CBW pipe mills. The claimants, however, further indicated that they serviced other areas of the mill and that their work was dependent on the number of man hours as supplied from each of the mills that they serviced. The claimants did indicate that as the seamless and pipe mills began to slow down the work in their area began to slow and as a result they were affected. The claimants further indicated by their representative that through the plant-wide seniority bump back situation as set forth in the contract between the union and the company they were displaced by workers from the affected area that had lost their job as a result of foreign imports as established by the certification herein. However, the referee notes that the claimants are unaware of by whom they were bumped or if the bump was the result of displacement in the certified area. Further, the claimants were unaware of the number of man hours assigned periodically to their areafrom [sic] the affected areas when if this resultingly caused the loss of full-time employment in this area."

"From the foregoing findings it is concluded that the claimants and each of them at the time of separation herein were not employed in adversely affected employment as set forth in the certification established from petition TA–W–1463. The referee further notes that the claimants and each of them herein have failed to establish a direct or indirect causal connection between the loss of their employment and the employment as provided in this certification as being certified. Therefore, the referee concludes that the claimants and each of them herein were not entitled to Trade Readjustment Allowance for the reason they were not separated from adversely affected employment."

▆▆▆ It is a basic rule of administrative law that findings of fact "must contain all the specific facts relevant to the contested issue or issues so that th[is] court may determine whether the Board has resolved those issues in conformity with the law." *Whispering Pines Home for Senior Citizens v. Nicalek,* (1975) Ind.App., 333 N.E.2d 324, 326. The findings must be specific enough to allow us to intelligently review the Board's decision. *Indiana Bell Telephone Co., Inc.* v. *Owens,* (1980) Ind.App., 399 N.E.2d 443. When the administrative board's decision precludes an award the findings of fact must exclude every possibil-

---

4. 19 U.S.C. § 2319(1) (1974) defines "adversely affected employment" as "employment in a firm or appropriate subdivision of a firm, if workers of such firm or subdivision are eligible to apply for adjustment assistance under this part."

ity of recovery. *Wolfe v. Review Board of the Indiana Employment Security Division,* (1978) Ind.App., 375 N.E.2d 652. If the findings are found to be lacking in these areas the cause should be remanded to the board. *Id.*

■ Here the contested issue is whether Jones is qualified for benefits under the certification,[5] i. e., whether he was "engaged in employment related to the production of steel plate and pipe tubing at the East Chicago, Indiana Plant of Youngstown Sheet and Tube Company." The findings set out that the claimants [used generally to include Jones] were not separated from adversely affected employment, which by the definition of the term "adversely affected employment" merely states the conclusion that they were not found to be eligible for benefits. The findings do not set out the determination that they were not involved in the production of steel plate and pipe and tubing or in employment related to such production. In addition, the findings do not include the reasoning used in arriving at the conclusion of ineligibility.

"A worker, group of workers, certified or recognized union, or an authorized representative of such worker or group, aggrieved by a final determination by the Secretary under the provisions of section 2273 of this title may, within 60 days after notice of such determination, file a petition for review of such determination with the United States court of appeals for the circuit in which such worker or group is located or in the United States Court of Appeals for the District of Columbia Circuit. The clerk of such court shall send a copy of such petition to the Secretary. Upon receiving such petition, the Secretary shall promptly certify and file in such court the record on which he based such determination."

The findings do set out the claimants' connection with the production of steel plate and pipe and tubing. However, we are given no indication of the significance of this fact in the referee's determinations. One could draw either of two inferences from this fact, i. e., the referee either concluded none of the claimants worked in the certified area or their connection with the certified area was not direct enough to qualify as "employment related to" it. By leaving these equally plausible inferences unresolved the Board has not specifically excluded every possibility of recovery. It is not our function to determine if both avenues of recovery were resolved by the evidence presented.

In addition, the findings offer us no insight into the reasoning processes used in drawing the conclusions. The final paragraph merely states the conclusion that "the claimants . . . have failed to establish a direct or indirect causal connection between the loss of their employment and the employment as provided in this certification." We are provided with the conclusion that claimants failed in their burden of proof but not provided with the steps used to reach that conclusion. Without the reasoning process revealed we can not be certain of the facts used or the intermediate conclusions drawn in the process of making the ultimate determination of ineligibility. The findings are not specific enough to allow us to follow the reasoning process which is necessary to intelligently review the decision.

We affirm the Board's dismissal of the appeals of the seven claimants as previously listed and remand for further findings of fact as to William Jones.

MILLER, P. J., and YOUNG, J., concur.

---

**5.** If Jones disagreed with the scope of the certification he is provided with a procedure for review by 19 U.S.C. § 2322(a) (1974):