**Richard A. GLOVER, Jr., Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 24, 2005.

Decided May 13, 2005.

As Amended May 24, 2005.

Reconsideration Denied July 7, 2005.

Richard A. Glover, Jr., petitioner, pro se.

Gerard M. Mackarevich, Deputy Chief Counsel and Teresa H. Deleo, Asst. Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

This case is before our Court upon the grant of an application for reconsideration filed by the Unemployment Compensation Board of Review (Board). Our January 18, 2005 order, granting reconsideration, withdrew this Court's prior opinion and order entered on November 9, 2004. In that opinion we reversed the Board and held that Richard A. Glover, Jr., (Claimant) who appealed pro se, was entitled to collect unemployment compensation benefits. The Board had disallowed Claimant receipt of an additional cycle of Trade Readjustment Allowance (TRA) benefits under the Trade Act [1] after he exhausted his first cycle.

The referee found that Claimant was originally employed by Motion Control and lost his position due to a plant closure in January 2002. His separation from employment was covered by the Trade Act, which established a federal program that provides TRA benefits to workers who are certified by the United States Secretary of Labor as persons adversely affected by unfair or injurious import competition. *See* n. 1. After Claimant's termination from Motion Control, he filed an Application for Training under the Trade Act on January 28, 2002. A few days later, he filed a Request of Determination Entitlement to Trade Act benefits with an impact date [2] of February 23, 2000 and a termination/expiration date of June 21, 2003. In February 2002, he received a determination [3] indicat-

---

1. As we have previously observed:

   The Trade Act, passed by Congress to "safeguard American industry and labor against unfair or injurious import competition," 19 U.S.C. § 2102, authorizes the United States Secretary of Labor to grant allowances to certain workers whom the Secretary determines to be unemployed as a result of certain types of foreign industrial competition, 19 U.S.C. § 2273. It envisions a symbiotic relationship between the federal allowances and the unemployment compensation laws of the various states, and provides that state law shall be applied. The regulations promulgated by the Secretary pursuant to the Trade Act provide that, after the Secretary determines which general categories of workers are eligible for assistance, the unemployment insurance agencies of the states have jurisdiction to determine the entitlements of individual claimants, and that appeals from such agency determinations shall follow the applicable route under state law.

   *Panczak v. Unemployment Compensation Bd. of Review*, 48 Pa.Cmwlth. 279, 409 A.2d 929, 930–931 (Pa.Cmwlth.1980) (footnotes omitted). *Accord Ford v. Unemployment Compensation Bd. of Review*, 48 Pa.Cmwlth. 580, 409 A.2d 1209 (1980).

2. " 'Impact date' means the date stated in a certification issued under the [Trade] Act on which total or partial separations began or threatened to begin in a firm or a subdivision of a firm." 20 C.F.R. § 617.3(v) (2004).

3. The record also shows that, in April 2002, Claimant filed a Request by Worker for Training Approval and Allowances While in Training, which was granted on August 29, 2002. His training was scheduled to end in May 2004.

ing that he was entitled to TRA benefits; that document did not state the specific amounts Claimant would receive.

Critical to this case is the undisputed fact that in August 2002, only days after Claimant began his training, he also began working two part-time jobs: one at Product Assurances, where he earned $50.00 per week, and the other at Ridgeway BiLo, where he earned $123.40 per week.

In November 2003, after Claimant's termination date, the Board mailed Claimant a Notice of Financial Determination.[4] This notice advised Claimant that he was financially eligible for an additional cycle of TRA benefits, but that such benefits would be paid only if, *inter alia,* "[y]ou have exhausted all other unemployment insurance and basic TRA available to you." (R. Item No. 8.) The notice further indicated that: (1) Claimant's weekly TRA benefit rate is $421.00; (2) the maximum combined total of his basic and additional TRA entitlement is $16,419.00; (3) he is entitled to $8.00 per week dependents allowance; and, (4) his additional TRA eligibility period begins on November 2, 2003 and ends on May 1, 2004. This paragraph of the notice stated, *"If you are entitled to State or Federal unemployment insurance, you cannot receive TRA benefits for those weeks."* (R. Item No. 8) (emphasis added). Finally, the notice advised Claimant that he had a partial benefit credit of $169 and that, if he earned that amount or less, he "may be eligible" for full benefits and, if he earned more than $169 but less then $590, he "may quality [sic] for partial benefits." (R. Item No. 8.) In fact, due to his two part-time jobs, Claimant earned

$175.00 per week, which was $6.00 more than his partial benefit credit.

■ In early January 2004, Claimant filed for the additional TRA benefits for the week ending December 27, 2003. However, the Bureau of Employment Security disallowed his request because it concluded that Claimant did not exhaust all rights to any state unemployment insurance benefits to which he would be entitled if he applied. Claimant appealed this determination. On appeal the referee held that because Claimant, by December 2003, had earned sufficient base year wages from his two part-time positions to qualify for regular unemployment compensation, he was not entitled to additional TRA benefits under the exhaustion provision of the Trade Act, 19 U.S.C. § 2291. This provision allows an employee to receive TRA benefits only where, "he has exhausted all rights to any unemployment insurance, except additional compensation that is funded by a State and is not reimbursed from any Federal funds, to which he was entitled (or would be entitled if he applied therefor)." 19 U.S.C. § 2291(a)(3)(B). Concluding that Claimant, because of his base year earnings from the part-time jobs, would be entitled to regular state unemployment compensation benefits should he apply for them, the referee disallowed Trade Act benefits. On appeal, the Board summarily affirmed. Claimant then appealed to this Court.[5]

Claimant argues that the referee erred by equating *eligibility* for regular unemployment benefits with *entitlement* to them and asserts that the Trade Act did

---

4. The record does not explain the status of benefits between June 2003, when Claimant's TRA benefits were to have terminated, and November 2003.

5. Our scope of review is limited to determining whether the Board's adjudication is in

violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Bd. of Review,* 797 A.2d 1042 (Pa. Cmwlth.2002).

not intend to deter a person from holding a part-time job. A quotation from Claimant's appeal to the Board sets forth his position:

> Three factory workers lose their jobs due to overseas competition. The same three apply for and receive TRA benefits. They also attend the same college and will graduate on the same day. Worker one worked just enough to receive benefits and quit stating he wouldn't work if he did not have to. Worker two worked just enough to receive benefits and took over housework and his wife worked more overtime. Worker three has worked one and two part-time jobs and did not quit. Worker one is still receiving TRA benefits. Worker two could not believe worker three lost TRA benefits but was glad he did not look for or find a job. Worker three is me.

(R. Item No. 15.)

■ As of the time he filed this appeal, Claimant continued to be employed at his part-time positions. Thus, the precise issue before the Court is whether, because Claimant has established a base year for the two part-time jobs, and could apply for benefits if he lost those jobs, he is "entitled" to state unemployment benefits under the Trade Act exhaustion provision. If so, the disallowance of additional Trade Act benefits was proper.[6] The Board's position is that if Claimant loses his part-time employment for reasons that are not otherwise disqualifying, he would be entitled or "qualified" to collect regular state unemployment benefits and, therefore, he has not exhausted his entitlement to state benefits. The Board contends that Claimant, having now established sufficient base year earnings to make him eligible for unemployment benefits based on his two part-time jobs, is "entitled" to state bene-

fits within the meaning of Section 2291(a)(3) even though he is not presently unemployed as to the two part-time jobs, and those part-time jobs were not the employment that qualified him to receive Trade Act Benefits.

■ The Trade Act was designed to reduce barriers to international trade, which would provide economic benefits to the country as a whole but, at the same time, could cause workers in certain industries to lose their jobs. *See Skrundz v. Review Bd. of Indiana Employment Sec.,* 444 N.E.2d 1217, 1225 (Ind.Ct.App.1983). The Trade Act, therefore, provides assistance to those workers, entitling them to receive a benefit allowance, job counseling, testing and placement services, costs for re-training, job search allowances, and relocation allowances. 19 U.S.C. §§ 2295, 2296, 2297, 2298. Because the Trade Act's purpose is remedial, its eligibility provisions must be liberally construed. *Embaby v. Dep't. of Jobs & Training,* 397 N.W.2d 609, 611 (Minn.Ct.App.1986). *However,* the Trade Act also contains an express exhaustion requirement in 19 U.S.C. § 2291(a)(3)(B). This provision states that TRA will be paid only if the following condition is met:

> . . .
>
> (3) Such worker—
>
> . . .
>
> (B) **has exhausted all rights to any unemployment insurance,** except additional compensation that is funded by a State and is not reimbursed from any Federal funds, **to which he was entitled (or would be entitled if he applied therefor)** . . . .

19 U.S.C. § 2291(a)(3)(B)(emphasis added).

The Board asserts that Claimant does not meet this exhaustion requirement. It

---

6. The Board concedes there are no cases directly on point.

relies on a federal regulation, pertaining to the TRA, which provides that, "[a]n individual shall be deemed to be entitled to [unemployment insurance] under a State law if the individual satisfies the base period employment and wage qualifying requirements of such State law." 20 C.F.R. § 617.16(c)(1). The record is clear that at the time of the Board's determination, Claimant satisfied the base year and wage qualifying requirements for regular unemployment compensation based upon his base year earnings, which included the earnings from his two part-time jobs. Thus, Claimant had not exhausted his entitlement to state benefits under Section 2291(a)(3)(B) of the Trade Act as interpreted by the federal regulation. Therefore, we are constrained to agree with the Board that the grant of additional TRA benefits is not permitted.

While there are no cases on point, our legal conclusion is in accordance with *Daman v. Unemployment Compensation Bd. of Review*, 840 A.2d 457 (Pa.Cmwlth.2004), where we applied a similar exhaustion provision and held that that claimant could not collect more generous benefits under the federally established Temporary Extended Unemployment Compensation Act (TEUC Act) because he was financially eligible for regular state unemployment benefits.[7] It is also in line with *McQuown v. Unemployment Compensation ·Bd. of Review*, 834 A.2d 692 (Pa.Cmwlth.2003), which, although it involved a different substantive provision of the TRA,[8] held that TRA benefits had to be suspended where the claimant became eligible for and actually began to receive TEUC Act benefits. This was because TEUC Act benefits are "classified as the regular unemployment compensation program." *Id.* at 694. Therefore, we held in *McQuown* that the claimant was not concurrently eligible for additional TRA benefits.

Although we sympathize with Claimant and commend him on his laudable work ethic, we are constrained to recognize that the pool of unemployment funds is not unlimited and the exhaustion requirement is a legislatively mandated method for spreading those finite resources. As Judge Simpson explained in *McQuown*, "To the extent Claimant argues th[e] result [in her case] is unjust, she offers no authority, either in the Trade Act or elsewhere, which would authorize her receipt of additional TRA benefits. The unemployment compensation laws do not warrant a ruling in [c]laimant's favor, and we

---

7. Under Section 202(b)(1) of the Temporary Extended Unemployment Compensation Act of 2002, Title II, Pub.L. 107–147, 116 Stat. 21 (2002) (TEUC Act), TEUC benefits are limited to individuals who "have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year...." Under Section 202(c)(1) of the TEUC Act, "exhaustion" occurs when "no payments of regular compensation can be made under such law because such individual has received all regular compensation available to such individual based on employment or wages during such individual's base period...."

In *Daman* the employee, a per diem long-term substitute teacher, was prohibited by Section 402.1 of the Unemployment Compen-

sation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802.1, added by Section 5 of the Act of July 6, 1977, P.L. 41, from collecting benefits "between successive academic years." The referee and Board held that because the claimant was financially eligible for regular benefits he had not met the exhaustion requirement. We agreed, noting that the regular benefits "were merely held in abeyance by operation of law due to the limiting language in Section 402.1." *Daman*, 840 A.2d at 459.

8. The exhaustion provision at issue in *McQuown* was 19 U.S.C. § 2291(a)(3)(B), the same one at issue here.

have no equitable power to ignore the law." *Id.* at 696.

Accordingly, we must affirm the order of the Board.

## ORDER

NOW, May 13, 2005, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.